RICHARD D. JONES ET AL. *v.* EDGARDO
IPPOLITI ET AL.
(AC 15401)

Landau, Schaller and Healey, Js.

Argued September 15, 1998—officially released March 16, 1999

*Frank J. Silvestri, Jr.*, with whom were *Paul L. Bollo* and, on the brief, *Maximino Medina, Jr.*, for the appellants-appellees (defendants).

*Eliot B. Gersten*, with whom was *Jeanine M. Dumont*, for the appellees-appellants (plaintiffs).

*Opinion*

LANDAU, J. The defendants[1] appeal from the judgment of the trial court, rendered after a trial to the court, awarding damages, offer of judgment interest and attorney's fees to the plaintiffs[2] for services rendered by the plaintiffs to the defendants. In a succession of challenges to the factual findings of the trial court, the defendants claim that the trial court improperly found (1) that they failed to tender payment of the underlying debt, (2) that the promissory note executed by the defendants to the plaintiffs had not been paid, (3) that the defendants committed fraud and breached the duty of good faith, (4) that the depositing of funds into a particular account, the subsequent creation of certified checks and the transfer of equipment constituted an intent to defraud, (5) that the defendant Edgardo Ippoliti was the alter ego of the corporation under the identity rule, (6) that the award of attorney's fees was unreasonable and unconscionable and (7) that, as a matter of law, the defendants' failure to file a certificate of adoption of trade name, in addition to the findings of fraud and

---

[1] The defendants are Edgardo Ippoliti and Eppoliti, Inc. (the defendant corporation). Eppoliti Enterprises, Inc., was originally named as a defendant but claims against it have been withdrawn. Any reference to the defendants, therefore, includes only Edgardo Ippoliti and Eppoliti, Inc.

[2] The plaintiffs, partners in the law firm of Pepe and Hazard, are Richard D. Jones, Stephen B. Hazard, Louis R. Pepe, James A. Thompson, Ann F. Bird, Kathleen Bornhorst, James G. Green, Jr., Robert C. Hunt, Jr., Thomas G. Librizzi, David E. Rosengren, Walter W. Simmers, Michael A. Zizka, James C. Graham, James Mercier and Jeanine M. Dumont.

fraudulent conveyance, amounted to an unfair and deceptive practice as defined in the Connecticut Unfair Trade Practices Act (CUTPA).[3] In addition, the defendants claim that the trial court violated the Code of Judicial Conduct and General Statutes § 51-51i in that, not only was the appearance of impropriety present, but actual bias existed and, therefore, as a matter of public policy, the entire judgment should be set aside.[4] In their cross appeal, the plaintiffs seek to recover "in-house" attorney's fees for the services they performed to assist their trial counsel in the prosecution of this case. We affirm the judgment of the trial court.

The trial court found the following facts. In 1990, Edgardo Ippoliti, a shareholder of the defendant corporation, a masonry subcontractor, retained the plaintiffs to represent the defendant corporation in a dispute with Turner Construction Company, a general contractor,

---

[3] See General Statutes § 42-110b (a) et seq.

[4] "Legal contentions, like the currency, depreciate through over-issue. The mind of an appellate judge is habitually receptive to the suggestion that a lower court committed an error. But receptiveness declines as the number of assigned errors increases. Multiplicity hints at lack of confidence in any one [issue . . . M]ultiplying assignments of error will dilute and weaken a good case and will not save a bad one. . . . Most cases present only one, two, or three significant questions. . . . Usually . . . if you cannot win on a few major points, the others are not likely to help. . . . The effect of adding weak arguments will be to dilute the force of the stronger ones. . . . *State* v. *Pelletier,* 209 Conn. 564, 567, 552 A.2d 805 (1989)." (Internal quotation marks omitted.) *State* v. *Cruz,* 40 Conn. App. 515, 525–26, 672 A.2d 502, cert. denied, 237 Conn. 909, 675 A.2d 457 (1996).

At oral argument before this court, the defendants introduced arguments that were not presented in their briefs. This court will not consider arguments that are not presented in the briefs. See *Shew* v. *Freedom of Information Commission,* 245 Conn 149, 166 n.20, 714 A.2d 664 (1998). In *Shew,* the court refused to consider an argument presented by the plaintiff for the first time at oral argument because the claim was not briefed by either party. Id.; see also *New Haven Firebird Society* v. *Board of Fire Commissioners,* 32 Conn. App. 585, 591, 630 A.2d 131, cert. denied, 228 Conn. 902, 634 A.2d 295 (1993), citing *State* v. *Marra,* 222 Conn. 506, 536 n.16, 610 A.2d 1113 (1992); *Latham & Associates, Inc.* v. *William Raveis Real Estate, Inc.,* 218 Conn. 297, 300, 589 A.2d 337 (1991).

concerning the construction of the Yale Center for Molecular Medicine in New Haven. As the Ippoliti account fell in arrears, the plaintiffs suggested that the defendants agree to reduce the balance of their account to a promissory note. On March 1, 1991, the defendant corporation and Ippoliti jointly and severally executed a promissory note, which had a maturity date of December 31, 1991, in favor of the plaintiffs.[5] On December 17, 1991, and through subsequent statements to the plaintiffs, Ippoliti promised that he would be individually liable on a new promissory note covering the balance then due, $90,950.21, which included the unpaid original note. Ippoliti failed to execute the new promissory note and made false representations in order to induce the plaintiffs to continue to represent the defendants in the Turner matter.[6]

---

[5] The note provided for "any costs and expenses, including reasonable attorney's . . . fees incurred in the collection of this Note or in any litigation or controversy arising from or connected with this Note."

[6] This is evidenced by the following colloquy between the plaintiffs' counsel and the defendant Ippoliti during trial:

"Q. And you made a payment of $2000 a month for a few months [on the bills], didn't you?

"A. That's correct.

"Q. That was when the appeal was pending that Mr. Pepe had to defend?

"A. Yes.

* * *

"Q. And you were continuing to have him do work on the Turner matter as well as other matters while the case was pending the appeal.

"A. That's correct.

* * *

"Q. And did you continue to make promises to [Mr. Pepe] that you'd make sure he got paid . . . ?

"A. I told Mr. Pepe that he was going to get paid.

* * *

"Q. You reached an understanding to pay Mr. Pepe's law firm $85,000 to discount the outstanding account receivable, didn't you?

"A. I reached an understanding with Mr. Pepe to pay him $85,000.

"Q. And did you ever pay him that [amount]?

"A. I was more than willing to pay him.

"Q. Have you paid him today?

"A. No. I have not."

The defendants thereafter failed to tender payment to the plaintiffs. The plaintiffs commenced the underlying action in 1993 to collect fees for services rendered, primarily in connection with the defendant corporation's dispute with Turner Construction Company, together with interest and attorney's fees. The plaintiffs alleged breach of contract, failure to pay a promissory note, quantum meruit, promissory estoppel, breach of a duty of good faith and fair dealing, fraudulent conveyance, fraud and violation of CUTPA. The defendants counterclaimed, alleging breach of contract and breach of the duty of good faith and fair dealing, conversion and violation of CUTPA. Following a lengthy trial, the trial court found for the plaintiffs on each count of the complaint and on each count of the counterclaim.[7]

## I

## THE APPEAL

Initially, we address the defendants' claim that the public policy embodied in Canon 3 (c) of the Code of Judicial Conduct[8] and General Statutes § 51-51i[9] compels this court to set aside the judgment. Specifically, the defendants claim that the issue in this case is not an appearance of bias but whether there is actual bias.

---

[7] The judgment reflects that the trial court awarded the plaintiffs damages in the amount of $155,882.28, offer of judgment interest in the amount of $56,890.97 and attorney's fees of $163,134.80.

[8] Canon 3 (c) of the Code of Judicial Conduct provides in relevant part: "Disqualification. (1) A judge should disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned . . . ."

[9] The defendants erroneously cite General Statutes § 50-51i in their statement of issues, but do correctly cite General Statutes § 51-51i (a) (2) in their argument and it is in their appendix. General Statutes § 51-51i (a) provides in relevant part: "In addition to removal by impeachment and removal by the Governor on the address of two-thirds of each house of the General Assembly as provided in the Connecticut Constitution, a judge shall be subject, in the manner and under the procedures provided in this chapter to censure, suspension or removal from office for . . . (2) wilful violation of section 51-39a or any canon of judicial ethics . . . ."

The following additional facts are relevant to the resolution of this claim. On November 17, 1994, at the beginning of the trial, the trial judge volunteered that he was familiar with the masonry business because, as an attorney, he had represented a mason supplier, American Mason Supply. At that time, the defendants' counsel failed or neglected to advise the trial court of any contact between American Mason Supply and the defendants. Approximately one month later, the trial judge recognized the name of American Mason Supply when he reviewed recently subpoenaed documents. The trial judge, still unaware of any relationship between American Mason Supply and the defendants, pointed out that he had represented American Mason Supply in the past and indicated that the owner of the company was a close friend.[10] A lengthy discussion followed in which the defendants' counsel informed the court that while he was aware of the fact that the court had represented American Mason Supply, he had not been aware of the close friendship that existed between the court and the principal of that company.

During this discussion, the plaintiffs' counsel urged that the defendants either move to recuse the trial judge or waive the alleged conflict in order to avoid that issue on appeal.[11] The trial judge represented that he saw

---

[10] The following colloquy took place during trial:

"The Court: Well, first of all, let me just make this point. I think I made it before. I used to represent American Mason Supply. Not on this case, this came up after I went on the bench, but the owner of American Mason is a close friend of mine. Does anybody see any problem with that. I don't—

"[Defense Counsel]: Yes, I do."

[11] The attorney for the plaintiffs stated: "Your Honor, before we go any further just because in any event of an appeal, I don't want to be blindsided any more so than I think the court wants to be. The problem [the defendants' counsel is] raising now is either going to be the subject matter of what I can just see down the road of the judge should have recused himself, or [the defendants' counsel is] going to say, he's not going to press such a claim, but let's try not to be blindsided by something that's done later, and I would respectfully ask the court to determine from [the defendants' counsel] if he's making a claim that you should be subject to some recusal

no problem with the relationship's interfering with his adjudication of the case. Furthermore, the trial judge noted that he was familiar with a member of the plaintiffs' law firm because, when he represented American Mason Supply, the plaintiffs' law firm acted as opposing counsel and that particular attorney might have been hardheaded during negotiations. After further discussion regarding the nature of the relationship between the court and the owner of American Mason Supply, the defendants' counsel stated: "Your Honor, I accept the court's representations and I will not make a motion to recuse," at which point the trial continued.

The defendants assert that the public policy embodied in Canon 3 (c) and § 51-51i does not confer rights on litigants but, instead, imposes duties on the judiciary and, thus, the defendants could not have waived the claim of actual bias of the trial court.[12] Furthermore, the defendants appear to argue that actual bias existed in the proceeding based on the trial court's conclusions regarding the finding of fraud, the finding that the promissory note had not been paid, the awarding of attorney's fees, the piercing of the corporate veil, the issuance of an ex parte attachment after the trial but before final judgment was rendered, and the termination of the automatic stay.

While we realize that both the original action and the appeal have a long history, the record in this hotly contested collection action is bare of any evidence substantiating allegations of judicial bias. In fact, the record

because if he's not, then we can go on. If he is and he's going to try to preserve such claim by that vague, quote, 'problem,' I just don't want to have to deal with it on appeal."

[12] We note that the defendants never raised this issue at trial but instead held that arrow in their appellate quiver, while reaping the benefit of a full trial. We may invoke our supervisory authority to review a claim that was not raised at trial where we deem it appropriate given the nature and significance of the issue. See *West Hartford Interfaith Coalition, Inc.* v. *Town Council*, 228 Conn. 498, 507, 636 A.2d 1342 (1994).

reveals that the trial judge affirmatively and candidly placed on the record his relationship with American Mason Supply and permitted the defendants the opportunity to move to recuse him. The defendants chose not to take advantage of the opportunity presented by the trial court but, instead, proceeded to trial. "We have made it clear that we will not permit parties to anticipate a favorable decision, reserving a right to impeach it or set it aside if it happens to be against them, for a cause which was well known to them before or during the trial. We have repeatedly indicated our disfavor with the failure, whether because of a mistake of law, inattention or design, to object to errors occurring in the course of a trial until it is too late for them to be corrected, and thereafter, if the outcome of the trial proves unsatisfactory, with the assignment of such errors as grounds of appeal." (Internal quotation marks omitted.) *Krattenstein* v. *G. Fox & Co.*, 155 Conn. 609, 616, 236 A.2d 466 (1967); *Parker* v. *Shaker Real Estate, Inc.*, 47 Conn. App. 489, 497, 705 A.2d 210 (1998); see also *Schnabel* v. *Tyler*, 32 Conn. App. 704, 714–15, 630 A.2d 1361 (1993), aff'd on other grounds, 230 Conn. 735, 646 A.2d 152 (1994) (failure to request recusal or to move for mistrial represents acquiescence to judge's presiding over trial and prohibits review of claim on appeal); *Emerick* v. *Emerick*, 28 Conn. App. 794, 808, 613 A.2d 1351, cert. denied, 224 Conn. 915, 617 A.2d 171 (1992) (when not raised at trial by motion for disqualification, claims alleging judicial bias deemed waived); *Lo Sacco* v. *Young*, 20 Conn. App. 6, 9, 564 A.2d 610, cert. denied, 213 Conn. 808, 568 A.2d 793 (1989) (failure to request recusal or to move for mistrial construed as functional equivalent of consenting to judge's presiding over trial). We conclude, therefore, that this claim is without merit.

As to the remaining claims on appeal, the parties agree that they encompass a challenge to the trial court's findings of facts. "Our role in reviewing an

appeal based on the sufficiency of the evidence is well defined. Where the claim is that the evidence produced did not satisfy the burden of proof factually, the duty of an appellate court is well established. An appeal based on the sufficiency of evidence to support a factual finding carries a legal and practical restriction to review. The function of an appellate court is to review, and not to retry, the proceedings of the trial court. . . . Further, we are authorized to reverse or modify the decision of the trial court only if we determine that the factual findings are clearly erroneous in view of the evidence and pleadings in the whole record, or that its decision is otherwise erroneous in law. . . . It is, however, not our function to retry the case or to pass upon the credibility of witnesses." (Internal quotation marks omitted.) *Clement* v. *Clement,* 34 Conn. App. 641, 650, 643 A.2d 874 (1994). "Where there is conflicting evidence . . . we do not retry the facts or pass upon the credibility of the witnesses." (Internal quotation marks omitted.) *Emhart Industries, Inc.* v. *Amalgamated Local Union 376, U.A.W,* 190 Conn. 371, 404, 461 A.2d 422 (1983). The probative force of conflicting evidence is for the trier to determine. *Bowman* v. *1477 Central Avenue Apartments, Inc.,* 203 Conn. 246, 257, 524 A.2d 610 (1987). " 'In a case tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony.' *Kimberly-Clark Corp.* v. *Dubno,* 204 Conn. 137, 153, 527 A.2d 679 (1987)." *Steiger* v. *J. S. Builders, Inc.,* 39 Conn. App. 32, 34–35, 663 A.2d 432 (1995).

The parties to this litigation presented the trial court with conflicting evidence. The trial court heard the witnesses, judged their credibility and, in its memorandum of decision, set out a full and thorough finding of facts, on which it based its verdict, and awarded relief. After a careful review of the whole record, we are satisfied

that the trial court had sufficient evidence to support its factual findings and, therefore, its verdict and the relief granted were not clearly erroneous.

## II

## THE CROSS APPEAL

By their cross appeal, the plaintiffs seek to recover "in- house" counsel fees for the services they performed to assist their trial counsel. Specifically, the plaintiffs claim that attorneys and paralegals[13] employed by the plaintiffs' law firm (hereinafter Pepe and Hazard) spent substantial time assisting trial counsel, i.e., Gersten and Clifford, prior to and during trial by drafting numerous pleadings and briefs, conducting research and completing several other tasks necessary to prosecute this claim. The plaintiffs urge us to adopt what they claim to be a trend in other jurisdictions[14] to award reasonable attorney's fees for both outside counsel, as well as in-house counsel, who participate in the prosecution of a claim in which attorney's fees can be awarded. We decline to do so.

---

[13] This matter does not require us to determine whether fees for services performed by paralegals may be claimed as attorney's fees. But see General Statutes § 42-110g (d) at footnote 15.

[14] In support of their claim, the plaintiffs cite *Pittsburgh Plate Glass Co.* v. *Fidelity & Casualty Co. of New York*, 281 F.2d 538, 542 (3d Cir. 1960) (attorney's fees awarded for services provided by insurance company's in-house counsel); *Central States, Southeast & Southwest Areas Pension Fund* v. *Central Cartage Co.*, 76 F.3d 114, 115 (7th Cir.), cert. denied sub nom. *Mason & Dixon Lines, Inc.* v. *Central States, Southeast & Southwest Areas Pension Fund*, 519 U.S. 811, 117 S. Ct. 56, 136 L. Ed. 2d 19 (1996) (motion concerning cost sharing of fees and rate at which services of staff counsel should be reimbursed); *B-E-C-K Constructors* v. *Dept. of Highways*, 604 P.2d 578, 585 (Alaska 1979) (state awarded attorney's fees for services of outside counsel, as well as for staff attorney general); *Travelers Ins. Co.* v. *State Ins. Fund*, 155 Misc.2d 542, 546, 588 N.Y.S.2d 973 (Ct. Cl. 1992) (attorney's fees for services of in-house counsel pursuant to agreement of coinsurers to share cost of defense), aff'd 227 App. Div. 2d 208, 642 N.Y.S.2d 867 (1996); *Metropolitan Mortgage & Securities Co.* v. *Becker*, 64 Wash. App. 626, 632–34, 825 P.2d 360 (1992) (no prohibition against attorney's fees for in-house counsel).

Ordinarily, a successful litigant is not entitled to an award of attorney's fees. See *Rizzo Pool Co.* v. *Del Grosso*, 240 Conn. 58, 72, 689 A.2d 1097 (1997). This rule is known as the "American rule." See 20 Am. Jur. 2d, Costs § 72. "Connecticut adheres to the American rule. See, e.g., *Brookfield* v. *Candlewood Shores Estates, Inc.*, 201 Conn. 1, 14, 513 A.2d 1218 (1986); *Gino's Pizza of East Hartford, Inc.* v. *Kaplan*, 193 Conn. 135, 140, 475 A.2d 305 (1984); *Gionfriddo* v. *Avis Rent A Car System, Inc.*, 192 Conn. 280, 297, 472 A.2d 306 (1984); *Litton Industries Credit Corporation* v. *Catanuto*, 175 Conn. 69, [76], 394 A.2d 191 (1978) . . . ." (Citations omitted; internal quotation marks omitted.) *Rizzo Pool Co.* v. *Del Grosso*, supra, 72–73. Connecticut recognizes, however, the exceptions to this rule. A successful litigant is entitled to an award of attorney's fees if they are provided by contract; see *Storm Associates, Inc.* v. *Baumgold*, 186 Conn. 237, 245, 440 A.2d 306 (1982); by statute; see, e.g., General Statutes § 52-251a (attorney's fees awarded on small claims matter transferred to regular docket); or as an aspect of punitive damages. See *Bodner* v. *United Services Automobile Assn.*, 222 Conn. 480, 492, 610 A.2d 1212 (1992). In the case before us, the trial court awarded the plaintiffs attorney's fees pursuant to the promissory note (count one) and CUTPA (count nine),[15] and as a punishment for the defendants' fraudulent conduct (count eight).

Neither our Supreme Court nor this court has ruled on the propriety of an award of attorney's fees to in-house counsel who themselves are plaintiffs in the underlying action. The plaintiffs insist that the services Pepe and Hazard provided arise naturally and generally

[15] General Statutes § 42-110g (d) provides in relevant part: "In any action brought by a person under this section, the court may award, to the plaintiff, in addition to the relief provided in this section, costs and reasonable attorneys' fees based on the work reasonably performed by an attorney and not on the amount of recovery. . . ."

from the acts of the defendants, and that the defendants are, therefore, liable to pay them. By denying the plaintiffs' request for fees for Pepe and Hazard's services, the plaintiffs claim that the trial court indirectly penalized them for their decision to provide trial counsel with legal support throughout the case. Specifically, the plaintiffs argue that, in this case, an award to the successful litigant of reasonable attorney's fees for the services Pepe and Hazard provided is appropriate because the time devoted to this case was time not available for other work.

In opposition, the defendants place before us a number of cases in which courts have denied an award of attorney's fees to plaintiffs who are attorneys appearing on their own behalf.[16] The defendants assert that if plaintiff-attorneys representing themselves are not entitled to an award of attorney's fees, then, a fortiori, plaintiff-attorneys who merely assist their trial counsel, for whose services they have received an award of attorney's fees, are not entitled to an award of attorney's fees for their own services. The distinction raised by the defendants is significant.

To begin our analysis, we must determine whether Pepe and Hazard and in-house counsel are synonymous. The plaintiffs identify and describe themselves at paragraph one of their amended complaint: "Plaintiffs . . . are attorneys at law duly licensed to practice law in the state of Connecticut and in good standing; the plaintiffs practice law under the name and style of Pepe & Hazard . . . ."

We now look to the accepted definitions of attorney and in-house counsel. "Attorney. In the most general

---

[16] *Connor* v. *Cal-Az Properties, Inc.*, 137 Ariz. 53, 55–56, 668 P.2d 896 (1983); *O'Connell* v. *Zimmerman*, 157 Cal. App. 2d 330, 336–37, 321 P.2d 161 (1958); *Sessions, Fishman, Rosenson, Boisfontaine & Nathan* v. *Taddonio*, 490 So. 2d 526, 527 (La. App. 1986).

sense this term denotes an agent or substitute, or one who is appointed and authorized to act in the place or stead of another." Black's Law Dictionary (6th Ed. 1990). "House counsel. Lawyer who acts as attorney for business though carried as an employee of that business and not as an independent lawyer. Generally, such lawyer advises business on day to day matters. Larger businesses have legal departments with attorneys assigned to specialized areas of law affecting their particular business . . . ." Id. "House counsel: A lawyer who is an attorney-employee of a business or organization. He or she works for a salary, unlike an independent attorney who works for a fee." W. Statsky, Legal Thesaurus/Dictionary (1986). "A lawyer is a representative of clients, an officer of the legal system and a public citizen having special responsibility for the quality of justice." Preamble, Rules of Professional Conduct. By definition, the plaintiffs are not in-house counsel because they are not employees of a business whose function is to advise the business on day-to-day matters. We conclude, therefore, that the cases cited by the plaintiffs in support of their claim that the trial court should have awarded them attorney's fees for the services performed by Pepe and Hazard are factually distinguishable in that attorney's fees in those cases were awarded for the work done by in-house counsel in businesses such as insurance companies.[17]

The next question is whether Pepe and Hazard functioned as an attorney in this matter. To begin with, we note that Pepe and Hazard did not enter an appearance on behalf of the plaintiffs in this matter. "Except by leave of the judicial authority, no attorney shall be permitted to appear in court or to be heard in behalf of a

---

[17] This case does not require us to determine whether, in the appropriate circumstances, a plaintiff may be entitled to attorney's fees for the services that in-house counsel provides to outside counsel during the course of litigation. We leave that issue for another day.

party until the attorney's appearance has been entered. . . ." Practice Book § 3-7 (a). Because Pepe and Hazard did not enter an appearance on behalf of the plaintiffs, it did not represent them in this action.

Even if we were to conclude otherwise, i.e., that Pepe and Hazard represented the plaintiffs, such representation would have been of a pro se nature. The law of this state is that pro se litigants are not entitled to attorney's fees. See *Lev* v. *Lev*, 10 Conn. App. 570, 575, 524 A.2d 674 (1987). Therefore, the plaintiffs were not entitled to attorney's fees for the services provided by Pepe and Hazard, and the trial court properly denied the plaintiffs' request for them.

The judgment is affirmed.

In this opinion the other judges concurred.