[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The Plaintiff (Empire) in this case claims a balance due for unpaid premiums under a worker's compensation insurance policy (The Policy) for a period of coverage from January 1, 1994 to January 1, 1995. The Defendant (Northeast) denies the claim. By way of ten special defenses Northeast essentially asserts the policy which was generated for the coverage by the respective agents of the parties orally and in writing represented and warranted to the defendant that "plaintiff's rules, rate plans and classifications used in calculating the policy premiums provided a sufficient margin or threshold so that the defendant would not have to pay any policy premiums following the policy period in excess of the estimated annual premium set forth on the information page of the contract and policy of insurance. Northeast further asserts in the other special defenses subject matter which make up the counterclaim recited wherein the defendant claims damages for misrepresentations of the terms of the policy in the First Count of the Counterclaim and the Second Count under Connecticut Unfair Trade Practices Act C.G.S. Sec.42-110a et seq (CUTPA).
As set out in the pleadings, the policy was negotiated by the respective parties' agents i.e. NPA Associates LTD (NPA) for the CT Page 11364 Empire and Corporate Risk Specialists, Inc. (Corporate Risk) for Northeast.
Empire produced only one witness, Mohamad Sarif (Sarif), who has been employed by Empire for nine years in the Collection Department and is now in the Underwriting Department. Sarif testified that the Policy was an audit premium policy. Sarif discussed the provisions of the policy which makes the policy an Audit Premium Policy. Sarif referred to Paragraph 4 of the Policy which reads "subject — all information required below is subject to verification and change by audit." Paragraph 5 of the policy reads.[1]
Exhibit 3 a copy of the audit report was introduced as a business record. The report is on stationary of Northeast Audit Services Inc. for the policy period 1/1/94 to 1/1/95. The report describes the parties insures the class of work Northeast performed.
Exhibit 4 also a business record was introduced describing the earned premium generated by the information contained in Exhibit 3 and the balance due of $142,498.
The defendant in this case also produced only one witness, Joseph Desiderio (Desiderio), of Waste Management who became the parent company of Brie Refuse and Recycling the company that was covered by the policy. All companies are now under one umbrella, the defendant Northeast. Desiderio who is Chief Financial Officer for Northeast negotiated the policy, the subject matter of this case. Desiderio testified that Empire had provided the policy coverage in the prior year but that in 1994, the year of this policy, there was a modification to the prior year policy contained in Exhibit A which came into evidence without objection. (See Transcript pp. 52, 53).
Exhibit A was generated by Corporate Risk, agent for the Defendant Northeast, with copies to NPA, agent for Empire. Exhibit A came in as a business record. It is a fax from the agent of the defendant to the defendant who claims that on page 2 it modifies the previous years policy by placing a cap on the workers compensation premiums on the original policy for 1993-1994 in the amount of $1,350,000. The fax (Exhibit A) states that the "Workers Comp", as per a conversation between Northeast and Corporate Risk, was being bound. The defendant asserts that because a copy of Exhibit A was sent to NPA the agent for Empire, CT Page 11365 this binds Empire. Further language pertaining to the claimed cap of $1,350,000 recites, "The audit be calculated as discussed."
Desiderio testified what he understood was how the premium would be calculated in the first place that there was a cap and also although he did not expect an audit, when the audit was completed he did not receive an explanation how the audit fit in.
Essentially the defendant Northeast asserts that there was to be no audit.
After receipt of the audit and, bill Northeast filed a complaint with the Insurance Commission for the State of Connecticut and received Empires explanation to Northeast's complaint contained in Exhibit B under the letter head of Empire.
Exhibit B is a termination of NPA dated July 15, 1998 and as the court pointed out (Transcript 69) that the court would not allow any unreasonable inferences from the Exhibit to affect the policy in this case.
Desiderio testified that Empire never provided an explanation of the audit and just sent them a bill. When asked if the defendant paid a post audit premium in prior years, Desiderio stated yes, but there was no payment made for the year of 1994 because of the claimed cap.
Under cross examination, Desiderio admitted he never spoke to Empire or NPA, only to Corporate Risk.
Empire introduced sworn answers to interrogatories 2, 3 and 4 (Exhibit 5) to discredit the testimony of Desiderio that his agent and the agent of Empire had negotiated a no audit premium amendment to the policy under (Defendants Exhibit 4). Desiderio asked for an explanation of the audit done apparently by NPA, agent for Empire, with binding authority. Both parties had used agents for binding authority and the term of the Policy, but neither parties presented any representatives of those entities.
Empire now asserts that the answers to questions 3 and 4 of interrogatories inquiring specifically about the numbers used in the final audit statement, indicated only that the policy premiums were not to exceed the estimate on the information page of the policy. Empire argues that the answers to the interrogatories not providing the specific objections to the CT Page 11366 audit conflict with Desiderio's present testimony and thereby he had not prepared to bring in witnesses to prove his case regarding the audit or cap because of the misleading answers to the interrogatories.
Empire's argues that the answer to the interrogatories relieved the plaintiff of its burden of proof to prove that Empire or its agent prove that the policy not only provided for an audit but that the audit had been done in accordance with paragraph 4 under the face of the policy. This court does not interpret the answers to the interrogatories can be interpreted to relieve the plaintiff of its burden of proof.
At the close of the examination of Desiderio, counsel for Empire requested a continuance to bring in "someone that will demonstrate that the figures in the audit were correct" had the defendant provided true answers to Exh. 5. The court denied the request. (See Transcript pp 81-82). At the start of trial, counsel for Northeast sought to enforce a subpoena to have the plaintiff produce records and witnesses to establish that the audit was done in conformity with the terms of the policy which was strenuously opposed by Empire.[2]
Northeast argues that it disputed the conduct of the post policy audit and was never provided with documentation notwithstanding its further claim that the policy had been amended to provide for no post audit premiums above a cap of $1,350,000. The witness, Sarif, offered by the plaintiffs could not tell how the audit was done or how the Manual of Rules recited in the policy was applied. He was not familiar with any of the documentation other than testifying they qualified for admission under the business record rule
The defendant argues that the evidence failed to prove that the post policy audit premiums set forth in Exhibit 4, the bill had been proven.
The evidence in this case was conflicting as to whether (1) there was a cap pertaining to the premiums and (2) whether the audit was done in conformity with the contract. The Plaintiff was aware at all times from the pleadings in this case that the defendant was claiming in their many special defenses that the claim was disputed.
The court finds that the Plaintiff in this case has not CT Page 11367 produced sufficient evidence adduced at trial to convince the court that the post premium audit was not modified to provide for a cap of $1,350,000, or that the audit which came as a surprise was done in conformity with the contract. No explanation was provided for the balance claimed to which the defendant was entitled.
In Ormsby v. Frankel, 54 Conn. App. 98, 109 the court stated:
 "Our role in reviewing an appeal based on the sufficiency of the evidence is well defined. Where the claim is that the evidence produced did not satisfy the burden of proof factually, the duty of an appellate court is well established. An appeal based on the sufficiency of evidence to support a factual finding carries a legal and practical restriction to review. The function of an appellate court is to review, and not to retry, the proceedings of the trial court . . . Further, we are authorized to reverse or modify the decision of the trial court only if we determine that the factual findings are clearly erroneous in view of the evidence and pleadings in the whole record, or that its decision is otherwise erroneous in law . . . The probative force of conflicting evidence is for the trier to determine. Bowman v. 1477 Central Avenue Apartments, Inc., 203 conn. 246, 257, 524 A.2d 619 (1987)." (Citations omitted; internal quotation marks omitted.) Jones v. Ippoliti, 52 Conn. App. 199, 206-207, 727 A.2d 713 (1999). "[W]e must determine, in the light most favorable to sustaining the verdict, whether the totality of the evidence, including reasonable inferences therefrom, supports the jury's verdict . . ." (Emphasis in original; internal quotation marks omitted.) Paige v. St. Andrews Roman Catholic Church Corp. , 247 Conn. 24, 30, 718 A.2d 425 (1998)."
The court need not address all the special defenses specifically since the content and the testimony provided therein has assisted the court to conclude that judgment be entered in favor of the defendant Northeast.
Northeast has failed to meet the required burden of proof as to the counterclaim. Accordingly, judgment is entered in favor of the Plaintiff as to the counterclaim.
Frank S. Meadow Judge Trial Referee CT Page 11368