[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] RULINGS ON MOTION TO SET ASIDE VERDICT, MOTION FOR ATTORNEYS' FEES AND MOTION FOR JUDGMENT
The jury in this matter found in favor of the plaintiff Advest, Inc., on its claims that the defendant Carvel Corporation breached an agreement regarding the exclusive provision of investment banker services and breached its duty of good faith and fair dealing, and awarded $405,983.46 in damages. In addition, the jury found that attorney fees were to be awarded pursuant to the terms of the contract, but, by agreement of the parties, the amount of attorneys' fees was left to a later determination by the trial court. The defendant Carvel now seeks to have the verdict set aside, and the plaintiff Advest seeks attorneys' fees and judgment.
The issues raised in the motion to set aside the verdict were considered and ruled upon during the course of the trial and no useful CT Page 6669 purpose is served by a lengthy reconsideration at this point. Carvel claims that a charge should have been given to the effect that any ambiguity in the contract was to be construed against Advest, because Advest physically wrote most of the language. Although such an instruction is of course appropriate in the case of a contract of adhesion, such as an insurance policy or other contract in which, typically, a prepared form is provided to a consumer who either signs or doesn't sign, the circumstances were different here. Advest did indeed initially prepare the proposed agreement, and forwarded it to Carvel for review, by itself and by counsel. Carvel suggested several revisions, which were made. In the context of dealing among equals, both of whom were commercially sophisticated, the rationale for the rule of contract construction urged by Carvel pales. I read the case law provided by both sides, and instructed the jury that they may consider who drafted any particular provision and take that information into account. I see no persuasive reason to change my mind at this point.
Carvel also claims that there was insufficient evidence supporting the count alleging breach of the covenant of good faith and fair dealing. There was evidence, for example, that Carvel had been told that Advest would not sign the agreement if Chase were to be excluded from the exclusivity agreement, yet Carvel went ahead and refinanced with Chase. During the summer of 1998, there was evidence that Carvel was secretly negotiating with Chase at the same time that Advest was trying to find additional financing. The jury could have found that Carvel's breach was far from innocent.
Finally, two errors in rulings on evidence are claimed. Carvel claims that William Caggiano, an officer of Chase, should have been allowed to testify as to whether he considered Amendment 17 to be a new loan. Mr. Caggiano's opinion has at best dubious probative value, and he was not disclosed or offered as an opinion witness. In the context of the trial, any error would, in my opinion, have no effect on the outcome of the trial, because Mr. Caggiano and others testified in considerable detail about the entire course of transactions. And Carvel claims error in the exclusion of testimony of George Brooks-Gonyer, Carvel's chief financial officer at the time, as to whether he believed that the January, 1998, agreement covered any transaction with Chase. Unexpressed intention is not necessarily relevant as to issues of contract construction, thus any probative value was outweighed by prejudicial impact. of course, the witness was allowed to testify at length concerning many aspects of the transaction, and, although it is true that objection to the particular question now in dispute was sustained, the position of the witness was clear in any event, and any error in the ruling on that particular question could have had no effect of the outcome of the trial, The motion to set aside the verdict is denied. CT Page 6670
Additionally, Advest has filed a motion for attorney fees. As noted above, the jury found that an undetermined amount of such fees was due under the contract. Advest was apparently represented at trial by two attorneys: Steven Greenspan of Day, Berry and Howard and Philip Wellman, who at one point was a lawyer at Day, Berry and Howard and at the time of trial was an assistant general counsel for Advest. Advest seeks from Carvel attorneys' fees for services rendered by both Greenspan and Wellman, and both have submitted affidavits and hourly time records. Carvel does not object to Greenspan's fees, but it does object to those of Wellman. Carvel claims that payment of attorney fees for in-house counsel is inappropriate, and additionally claims that some of the services provided by Wellrnan were duplicative, were spent essentially monitoring the trial, and, as evidenced by a failure to file an appearance, were not spent in the course of actively representing the client.
There apparently is no binding authority in Connecticut for or against the proposition that in-house counsel can recover attorney fees. In Jonesv. Ippoliti, 52 Conn. App. 199, 211 n. 17 (1999), the Appellate Court expressly reserved judgment. In Jones, the issue was whether, in the circumstances of that case, a law firm which was a party could recover attorney fees for representing itself to a degree. Although apparently the failure to file an appearance was a factor in the case, the Appellate Court held that in the circumstance in which a law firm was a party, in house fees were not appropriate.
I believe that our appellate courts would follow the apparently great majority of cases and would hold that the recovery of attorneys fees is not barred by the fact that counsel is in-house, but would examine the circumstances of the case to determine whether attorney fees were sought for activities regarding representing the party in the context of judicial proceedings or rather for activities acting as liaison and as the traditional in-house advisor. See, e.g., PLCM Group, Inc. v. Drexler,997 P.2d 511 (Cal. 2000); Holmes v. NBC/GE, 168 F.R.D. 481 (S.D.N.Y. 1996); aff'd, 133 F.3d 907 (2d Cir. 1997).
The circumstances of this case indicate that Mr. Wellman took a reasonably active role in the trial of the case. He was present with lead counsel at the counsel table, and he examined one of the witnesses. He was prepared to cross-examine other witness had they been called by Carvel. He was experienced in litigation, as he had previously conducted litigation with the same law firm as lead counsel and apparently had recovered attorney fees. It was apparent during the course of the trial that he actively participated in tactical decisions.[1]
CT Page 6671
I find, then, that Advest is entitled in some measure to Mr. Wellman's attorneys' fees. I agree that the lodestar analysis is the most logical[2]: Mr. Wellman claims 79 hours spent at $250/hour, for a total of $19,750.00. Advest claims that an analysis of the time records shows duplication — Mr. Wellman assisted Mr. Greenspan in the preparation of requested jury instructions and review of depositions — and much activity functionally in the role of liaison. I find it appropriate to take into account several factors to adjust the lodestar figure.
Mr. Wellman claimed $250/hour. Mr. Greenspan claimed rates from $245/hour to $275/hour, depending on the time that the services were rendered. I find that although Mr. Wellman did actively participate in trial, and although I do not find that the activities in his time records were expressly duplicative, he was clearly acting in the role of associate or second chair. He undoubtedly performed some of the more traditional liaison during the course of representation as well, although his time record seems to have been carefully prepared to try to include only the time spent in traditionally representative activity. As a result of the "second seat" status, however, I find that the more appropriate billing rate is $185/hour, for a total of $14,615.00. The total amount awarded for attorneys' fees is, then, $112,477.50.
There is no dispute that because of the plaintiff's filing of an offer of judgment, an additional amount of $115,028.65 must be included in the judgment. Judgment may enter, then, in the total amount of $633,489.61.
 _____________________ BEACH, JUDGE