[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This dispute between two neighbors on Round Hill Road in Greenwich, the plaintiff, John R. Curtin, and the defendant, Phyllis Burger, regarding the use of a right of way, was the subject of an earlier memorandum of decision dated February 25, 2000. In that decision, the pleadings and the report dated May 24, 1999, as amended on July 9, 1999, by Attorney Robert A. Skovgaard, the attorney trial referee to whom the case was assigned for trial, were reviewed. The controversy concerned a right of way or driveway over the defendant's property to land owned by the plaintiff. The referee recommended judgment in favor of the defendant as to the plaintiff's complaint, and in favor of the defendant as to her counterclaim.
The case was remanded by the court to the attorney trial referee to determine the amount of punitive damages he had recommended be awarded to the defendant based only on the attorney's fees she incurred in prosecuting her counterclaim, not in defending against the complaint. Consequently, the referee conducted a hearing, found the hourly rates and the total hours spent to be reasonable, attributed 50% of the total legal fees to the counterclaim, and recommended that the defendant be awarded $59,912.50, which represented one half of the total legal fees she incurred both in defending the plaintiff's complaint and in pursuing the counterclaim.
The earlier memorandum pointed out that the attorney trial referee concluded that the plaintiff owes the defendant the following sums of money: (1) $8,712, representing one half of the expenses incurred by the defendant in maintaining the of way which is located entirely on her property; (2) $1,210 for repair of the defendant's lawn; (3) $1 nominal damages for removal of the defendant's fence; (4) $720 for removal of a forsythia bush (trebled as authorized by General Statutes § 52-560); and (5) $50,000 for "wilful misconduct in the intentional infliction of emotional distress," for a total of $60,643. Adding $59,912.50 in punitive damages to reimburse the defendant for her "reasonable attorney's CT Page 566 fees" results in a total recommended judgment for the defendant in the amount of $120,555.50 on her counterclaim.
It was also noted in the earlier memorandum of decision that the plaintiff had moved to correct the referee's report[1] and had filed exceptions to the report, as authorized at the time by Practice Book § 19-13[2] The attorney trial referee declined to make any substantive changes to his report and recommendations as a result of either the plaintiff's motion to correct or his exceptions to the report.
As authorized by Practice Book § 19-14,[3] the plaintiff filed objections dated August 25, 1999, to the referee's report. These objections claim that: (1) the plaintiff's rights are not confined to the twelve feet of driveable pavement, but rather extend over the total width of the 25 foot access way; (2) the finding of intentional infliction of emotional distress is erroneous because: (a) there was no evidence of the plaintiff's intent to do so; (b) the conduct was not "extreme and outrageous;" (c) the interaction of the plaintiffs wife, Susan Curtin, with the defendant were erroneously attributed to the plaintiff; and (d) the defendant failed to submit evidence that she suffered severe emotional distress by, for example, presenting medical or counseling testimony or reports; and (3) the award of punitive damages was erroneous because there was no evidence of the intentional or willful disregard of the defendant's rights.
The attorney trial referee determined as a matter of fact that the defendant, the owner of the servient estate, had not interfered in any way with the plaintiffs rights to use his access way or easement over her property.[4] This finding is not challenged in the objections filed by the plaintiff. Hence, judgment for the defendant on the plaintiffs complaint is not contested. The plaintiff does challenge, however, the referee's findings that the plaintiff trespassed over and interfered with the defendant's use of her own property, and had engaged in the intentional infliction of emotional distress against the defendant.
Taking up first the issue of the extent of a right of way or access way easement, which is the subject of the first objection to the referee's report, the plaintiff argues that he has dominion over the full width of the right of way and is not confined to the paved portion of the easement. The plaintiff is the owner of the dominant estate, and the defendant owns the servient estate,[5] meaning that the defendant is the owner of the fee over which the plaintiff has the right of way. The defendant has all the indicia of ownership subject to the plaintiff's right to use his right of way, as expressly stated in the reservation of CT Page 567 the right of way. Kelly v. Ivler, 187 Conn. 31, 45, 450 A.2d 817 (1982) (the obligation of the owner of the servient estate is "to refrain from doing or suffering something to be done which results in an impairment of it").
It is well accepted that "[t]he use of an easement must be reasonable and as little burdensome to the servient estate as the nature of the easement and the purpose will permit. . . . The owner of an easement has all rights incident or necessary to its proper enjoyment, but nothing more." (Citation omitted.) Peterson v. Oxford, 189 Conn. 740, 744-45,459 A.2d 100 (1983); see also Kuras v. Kope, 205 Conn. 332, 341,533 A.2d 1202 (1987).
The extent of a right of way has also been discussed in more recent cases. For example, in Beneduci v. Valadares, 73 Conn. App. 795, ___ A.2d ___ (2002), the Appellate Court quoted the language cited above and stated that "[t]he decision as to what would constitute a reasonable use of a right-of-way is for the trier of fact whose decision may not be overturned unless it is clearly erroneous." (Internal quotation marks omitted.) Id.,803.
Thus, to summarize, the owner of the dominant estate has the right to free access and use of his easement without interference from the owner of the servient estate. The attorney trial referee's conclusion to that effect was not challenged in the plaintiffs objection. The owner of the servient estate, on the other hand, has the right to limit the owner of the right-of-way to the use stated in the reservation and to limit such use to the described bounds of the easement. The referee found that the plaintiff not only did not comply with this standard by trespassing on the defendant's property, but also that the plaintiff damaged her lawn, removed a fence, trimmed and damaged trees and removed a forsythia bush. The plaintiff does not, in his objections, deny that he did go on the defendant's lawn, trimmed or pruned some trees and foliage, and removed the forsythia bush.
As a general proposition, "[t]he duty of maintaining an easement so that it can perform its intended function rests on the owner of the easement absent any contrary agreement." Powers v. Grenier Construction,Inc., 10 Conn. App. 556,560, 524 A.2d 667 (1987); see also Schwartz v.Murphy, 74 Conn. App. 286, 298, ___ A.2d ___ (2002). In this particular case, however, there was a "contrary agreement," which was the basis for the attorney trial referee's finding that the defendant had the exclusive rights both to decide how to maintain the right of way, subject to not interfering with the plaintiffs rights of ingress and egress, and also to be reimbursed by the plaintiff for one-half the cost thereof.[6] This CT Page 568 is why he recommended that the plaintiff pay the defendant $8,712, representing a one-half share of the cost of maintenance of the access way. The referee's report regarding the plaintiffs monetary obligations as to the right of way is accepted.
The other objection is a factual one and relates to whether there is sufficient evidence to justify the finding that plaintiff had caused the defendant to suffer damages as a result of intentional infliction of emotional distress. Four elements must be pleaded to establish a cause of action for intentional infliction of emotional distress. Appleton v.Board of Education, 254 Conn. 205, 757 A.2d 1059 (2000). "It must be shown: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiffs distress; and (4) that the emotional distress sustained by the plaintiff was severe." (Internal quotation marks omitted.) Id., 210. "Liability for intentional infliction of emotional distress requires conduct that exceeds all bounds usually tolerated by decent society. . . . Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, `Outrageous!'" (Citations omitted; internal quotation marks omitted.) Id., 210-11.
In his report, the attorney trial referee noted that in addition to trespassing on the defendant's property and damaging her lawn and trees, removing bushes and a fence, the plaintiff had directed "verbally abusive language" at the defendant. The referee further found that this conduct on the part of the plaintiff was done intentionally with a reckless disregard of the defendant's rights and was designed to and did cause the defendant to suffer substantial emotional distress.
Since a transcript was furnished, the first inquiry is whether there is support in the record for the referee's findings of fact relative to the intentional infliction of emotional distress. The transcript contains testimony regarding damage to the defendant's lawn, bushes and trees caused by the plaintiff. In addition, there was a good deal of testimony regarding Mrs. Curtin's conduct towards the defendant, but the plaintiffs wife is not a party to this action. The defendant testified about an incident that occurred in the fall of 1992.[7] At another point in the trial, the defendant described the only other examples of some kind of confrontation between her and the plaintiff.[8] The issue is whether CT Page 569 these incidents involving Mr. Curtin and the defendant rise to the level of intentional infliction of emotional distress as discussed in Appletonv. Board of Education, supra, 254 Conn. 210.
A preliminary question is whether this issue is to be decided on the basis of the referee's findings of fact, or whether it is a matter of law. This very issue was addressed not more than five weeks ago inCampbell v. Plymouth, 74 Conn. App. 67, 811 A.2d 243 (2002). "In determining what conduct is extreme and outrageous `[t]he rule which seems to have emerged is that there is liability for conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind.' (Emphasis in original; internal quotation marks omitted.) Id., 254 n. 5, quoting W. Prosser W. Keeton, Torts (5th Ed. 1984) § 12, p. 60. "It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so.' (Internal quotation marks omitted.) Mellaly v. Eastman Kodak Co., 42 Conn. Sup. 17, 19 n. 1, 597 A.2d 846 (1991), quoting 1 Restatement (Second), Torts § 46, comment (h), p. 77 (1965)." Campbell v. Plymouth, supra, 74 Conn. App. 78. See also Appleton v. Board of Education, supra, 254 Conn. 210 ("[w]hether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine").
The statements by the plaintiff quoted from the transcript do not amount to conduct that is beyond the bounds of socially tolerable behavior." Campbell v. Plymouth, supra, 74 Conn. App. 78. "Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress." (Internal quotation marks omitted). Appleton v. Board of Education, supra,254 Conn. 211.
Since it is the court's obligation "to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery;" Campbell v. Plymouth, supra,74 Conn. App. 78; this court is not able to accept the attorney trial referee's recommendation that the defendant recover $50,000 on her counterclaim for the alleged intentional infliction of emotional distress. The quoted conduct, which certainly displayed bad manners and caused distress to the defendant, does not rise to the level of extreme and outrageous conduct which would be "regarded as atrocious and utterly intolerable in a civilized community." Appleton v. Board of Education, supra, 254 Conn. 211. The plaintiff is also seeking punitive damages and CT Page 570 attorney's fees. "[I]n order to award punitive or exemplary damages, evidence must reveal a reckless indifference to the rights of others or an intentional and wanton violation of those rights." (Internal quotation marks omitted.) Berry v. Loiseau, 223 Conn. 786, 811, 614 A.2d 414
(1992). As for attorney's fees, "[o]rdinarily, a successful litigant is not entitled to an award of attorney's fees. . . . This rule is known as the "American rule.'. . . Connecticut adheres to the American rule. . . . Connecticut recognizes, however, the exceptions to this rule. A successful litigant is entitled to an award of attorney's fees if they are provided by contract . . . by statute . . . or as an aspect of punitive damages." (Citations omitted; internal quotation marks omitted.)Jones v. Ippoliti, 52 Conn. App. 199, 209, 727 A.2d 713 (1999).
Whether the plaintiff acted with reckless indifference to the rights of the defendant or with an intentional and wanton violation of those rights are factual findings of the attorney trial referee and may not be successfully challenged. As pointed out in Meadows v. Higgins,249 Conn. 155, 733 A.2d 172 (1999), "[t]he factual findings of a [trial referee] on any issue are reversible only if they are clearly erroneous. . . . [A reviewing court] cannot retry the facts or pass upon the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) Id., 162.
The attorney trial referee determined as a matter of fact that the intentional or willful disregard of the defendant's rights had been sufficiently proven to justify punitive damages. There is nothing illogical or illegal about his conclusions. Hence, the referee's recommendations that judgment enter against the plaintiff on the complaint and that the defendant recover on her counterclaim are accepted in so far as these recommendations relate to physical damage to the defendant's property and punitive damages. Thus, judgment may enter for the defendant to recover on her counterclaim the amount of $10,643, and $59,912.50 as punitive damages representing legal fees in prosecuting the counterclaim, for a total judgment against the plaintiff of $70,555.50.
Costs are to be taxed in favor of the defendant by the clerk of this court in accordance with General Statutes § 52-25 and Practice Book § 18-5.
So Ordered. CT Page 571
Dated at Stamford, Connecticut, this 16th day of January, 2003.
 ___________________ William B. Lewis, Judge