LEONARD S. CAMPBELL *v.* TOWN OF PLYMOUTH
(AC 22185)

Foti, Mihalakos and Dranginis, Js.

Argued September 24—officially released December 10, 2002

*Philip M. Block*, for the appellant (plaintiff).

*Diana Garfield*, for the appellee (defendant).

*Opinion*

FOTI, J. This appeal arises from an action in three counts brought by the plaintiff, Leonard S. Campbell, against the defendant, his former employer, the town of Plymouth. The plaintiff appeals from the judgment of the trial court, claiming that the court improperly (1) granted the defendant's motion to strike counts two and three of the complaint,[1] which alleged, respectively,

---

[1] "Generally, the denial of a motion to strike does not constitute a final judgment because it neither terminates a separate and distinct proceeding nor concludes the rights of the parties so that further proceedings could not affect them." *White* v. *White*, 42 Conn. App. 747, 749, 680 A.2d 1368 (1996); see also *Costecski* v. *Skarulis*, 103 Conn. 762, 762–63, 131 A. 398 (1925) (holding no final judgment when case remains pending in trial court "to be thereafter heard upon its merits, upon the pleadings in the court below, or upon such amended pleadings as might legally be filed"). Our Supreme Court, however, has held that we do have jurisdiction to review a ruling on a motion to strike when it is before us as part of an appeal from a valid final judgment. See *Breen* v. *Phelps*, 186 Conn. 86, 88–91, 439 A.2d 1066 (1982). Because the present request to review a motion to strike is coupled with an appeal from the court's rendering of a summary judgment, we have jurisdiction to reach all of the plaintiff's claims. Id.

breach of the covenant of good faith and fair dealing, and intentional infliction of emotional distress, (2) granted the defendant's motion for summary judgment as to count one, which alleged wrongful discharge under General Statutes § 31-51m, and (3) denied the plaintiff's motion to reargue. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our disposition of the plaintiff's appeal. The defendant hired the plaintiff as its town planner on November 14, 1988. The personnel rules for the classified service employees of the town of Plymouth (personnel rules) governed the terms and conditions of the plaintiff's employment. In 1994, due largely to budget cuts, the town reduced the position of town planner from full-time to part-time. The plaintiff continued part-time in his capacity as town planner, and the defendant also hired him as its part-time zoning enforcement officer.

On April 7, 1997, the defendant discharged the plaintiff from his employment. The reason for the discharge is disputed. The defendant claims that it discharged the plaintiff because of insubordination and followed all corrective action procedures set forth in the personnel rules. The plaintiff, however, claims that the defendant discharged him because he refused to submit erroneous and fraudulent information in a report to the department of economic and community development, which had provided a development grant to the defendant.

After his discharge, the plaintiff filed for unemployment compensation benefits through the unemployment compensation commission. The defendant opposed payment of such benefits. According to the plaintiff, he pursued benefits through the commission until December 1, 1999, and appealed to the Superior

Court from the denial of benefits on December 30, 1999.[2] The plaintiff then commenced this action on March 21, 2000.

The plaintiff's complaint consisted of three counts, statutory wrongful discharge under § 31-51m, Connecticut's "whistle-blower" protection statute, a common-law wrongful discharge claim based on the breach of an implied covenant of good faith and fair dealing, and intentional infliction of emotional distress. The defendant filed a motion to strike counts two and three on May 12, 2000. The court, *Graham, J.*, granted the motion as to both counts on July 17, 2000, leaving only the statutory wrongful discharge claim unresolved. The plaintiff did not file new or amended pleadings as permitted by Practice Book § 10-44, nor did the court render judgment on the two stricken counts.

The defendant subsequently answered the complaint and asserted as an affirmative defense that the applicable statute of limitations barred the statutory claim. On February 5, 2001, the defendant filed a motion for summary judgment as to the one remaining count. The court, *Shortall, J.*, granted that motion on June 8, 2001, finding that the action was time barred. The plaintiff filed a motion to reargue on June 25, 2001, which the court denied. The plaintiff appealed on July 26, 2001.

I

The plaintiff first claims that the court improperly granted the defendant's motion to strike counts two

---

[2] The court noted in its memorandum of decision: "The plaintiff's references to 'December 1, 1999' and 'December 30, 1999' correspond to nothing in the record of the unemployment compensation proceedings made available to the court. As far as the record herein is concerned, the final decision of the employment security board of review adverse to the plaintiff appears to have been made on May 28, 1999, sustaining the defendant's appeal from a decision of an appeals referee granting the plaintiff unemployment compensation. . . . Obviously, an action commenced in March, 2000, would be barred by the ninety day statute [General Statutes § 31-51m (c)]."

and three of the complaint,[3] which alleged, respectively, breach of the covenant of good faith and fair dealing, and intentional infliction of emotional distress. Before discussing the merits of the plaintiff's arguments, however, we first set forth our standard of review.

A motion to strike tests the legal sufficiency of the pleadings "to state a claim upon which relief can be granted . . . ." Practice Book § 10-39 (a) (1). Because a determination of legal sufficiency is not a question of fact but one of law, our review of claims concerning a motion to strike is plenary. *Parsons* v. *United Technologies Corp.*, 243 Conn. 66, 68, 700 A.2d 655 (1997). "In an appeal from a judgment following the granting of a motion to strike, we must take as true the facts alleged in the plaintiff's complaint and must construe the complaint in the manner most favorable to sustaining its legal sufficiency." (Internal quotation marks omitted.) *Craig* v. *Driscoll*, 64 Conn. App. 699, 703, 781 A.2d 440, cert. granted on other grounds, 258 Conn. 931, 785 A.2d 228 (2001).

A

Count two of the complaint alleged that the defendant breached its covenant of good faith and fair dealing by

[3] In its ruling on the motion to strike, the court specified separate grounds for granting the motion as to counts two and three. The court dismissed count three, which alleged intentional infliction of emotional distress, because the alleged conduct was not extreme and outrageous within the meaning of such a cause of action. The court cited *Petyan* v. *Ellis*, 200 Conn. 243, 253–54, 510 A.2d 1337 (1986). The plaintiff does not address the court's reasoning as to count three in his brief. He discusses counts two and three together as if the court's rationale for striking both counts was the same. Only in his reply to the defendant's brief and at oral argument did the plaintiff attempt to address the issue of intentional infliction of emotional distress. "It is a well established principle that arguments cannot be raised for the first time in a reply brief." (Internal quotation marks omitted.) *Williams Ford, Inc.* v. *Hartford Courant Co.*, 232 Conn. 559, 593 n.26, 657 A.2d 212 (1995). Although it certainly is within our discretion to decline to review that claim because the plaintiff has raised the dismissal of count three in his appeal and at oral argument, and the defendant has fully briefed the

discharging the plaintiff. The plaintiff argues (1) that the court improperly decided that § 31-51m[4] was the plaintiff's exclusive remedy, (2) that by doing so, the court deprived the plaintiff of his right to plead in the alternative, as specifically provided for in Practice Book § 10-25,[5] and (3) that the court improperly presumed facts not in evidence. We disagree.

The court correctly decided on the basis of the Supreme Court's decision in *Burnham* v. *Karl & Gelb, P.C.*, 252 Conn. 153, 157–58, 745 A.2d 178 (2000), that § 31-51m provides the exclusive remedy for wrongful

---

issue despite the plaintiff's failure to do so adequately, we will reach the merits of the claim.

[4] General Statutes § 31-51m provides in relevant part: "(b) No employer shall discharge, discipline or otherwise penalize any employee because the employee, or a person acting on behalf of the employee, reports, verbally or in writing, a violation or a suspected violation of any state or federal law or regulation or any municipal ordinance or regulation to a public body, or because an employee is requested by a public body to participate in an investigation, hearing or inquiry held by that public body, or a court action. No municipal employer shall discharge, discipline or otherwise penalize any employee because the employee, or a person acting on behalf of the employee, reports, verbally or in writing, to a public body concerning the unethical practices, mismanagement or abuse of authority by such employer. The provisions of this subsection shall not be applicable when the employee knows that such report is false.

"(c) Any employee who is discharged, disciplined or otherwise penalized by his employer in violation of the provisions of subsection (b) may, after exhausting all available administrative remedies, bring a civil action, within ninety days of the date of the final administrative determination or within ninety days of such violation, whichever is later, in the superior court for the judicial district where the violation is alleged to have occurred or where the employer has its principal office, for the reinstatement of his previous job, payment of back wages and reestablishment of employee benefits to which he would have otherwise been entitled if such violation had not occurred. An employee's recovery from any such action shall be limited to such items, provided the court may allow to the prevailing party his costs, together with reasonable attorney's fees to be taxed by the court. Any employee found to have knowingly made a false report shall be subject to disciplinary action by his employer up to and including dismissal."

[5] Practice Book § 10-25 provides: "Alternative Relief

"The plaintiff may claim alternative relief, based upon an alternative construction of the cause of action."

discharge for "whistle-blowing" and that the availability of that statutory remedy precluded the plaintiff from pleading any alternative, common-law cause of action.

Generally, Connecticut follows the rule that employment is at-will and terminable by either the employee or the employer with impunity. *Fisher* v. *Jackson*, 142 Conn. 734, 736, 118 A.2d 316 (1955). We have recognized an exception to that rule, however, where an "employee can prove a demonstrably *improper* reason for dismissal, a reason whose impropriety is derived from some important violation of public policy." (Emphasis in original.) *Sheets* v. *Teddy's Frosted Foods, Inc.*, 179 Conn. 471, 475, 427 A.2d 385 (1980) (creating public policy exception to doctrine of at-will employment). In such cases, the plaintiff may have a common-law cause of action against the employer. In *Atkins* v. *Bridgeport Hydraulic Co.*, 5 Conn. App. 643, 501 A.2d 1223 (1985), however, this court further narrowed that cause of action by holding that our public policy exception to the at-will doctrine is available only in cases in which there are no other available remedies and " 'permitting the discharge to go unredressed would leave a valuable social policy to go unvindicated.' " Id., 648, quoting *Wehr* v. *Burroughs Corp.*, 438 F. Sup. 1052, 1054 (E.D. Pa. 1977).

In *Burnham* v. *Karl & Gelb, P.C.*, supra, 252 Conn. 159–62, our Supreme Court explicitly affirmed our decision in *Atkins* and further held that because § 31-51m (c) provides a statutory cause of action for employees who are terminated for "whistle-blowing," the public policy exception does not apply. Section 31-51m, therefore, provides the exclusive remedy for such employees and precludes any common-law actions in either tort or contract. Id., 158.

In his determined attempt to avoid the obvious application of the *Burnham* holding to this case, the plaintiff

mistakenly relies in great part on *Wolverine Fire Protection Co.* v. *Tougher Industries, Inc.*, Superior Court, judicial district of Hartford, Docket No. 805554 (June 20, 2001) (29 Conn. L. Rptr. 731), in which the Superior Court, *Hon. Robert J. Hale*, judge trial referee, held that General Statutes § 49-42[6] was not an exclusive remedy. In that case, the court reasoned that the statute itself did not have an exclusivity provision and there was no appellate case law expressly addressing the issue. Id., 732. Although it is axiomatic that a Superior Court decision is not binding precedent for this court, we nonetheless find that its reasoning is inapplicable here.

First, although admittedly § 31-51m also contains no exclusivity language, *Burnham*, as previously stated, does provide adequate precedent from this state's highest court that § 31-51m is an exclusive remedy. More importantly, the *Wolverine Fire Protection Co.* court itself correctly distinguished its decision from those decisions of other Superior Courts that "deal with a statutory remedy and the breach of the implied covenant of good faith and fair dealing in the context of employment law." Id. One such case, *Rothberg* v. *United Illuminating Co.*, Superior Court, judicial district of New Haven, Docket No. 391576 (February 5, 1997) (18 Conn. L. Rptr. 690), specifically holds that because § 31-51m provides a statutory remedy, an action brought on the basis of an alleged breach of the implied covenant of good faith and fair dealing is precluded. We find that the present case is like *Rothberg* and agree with that court's decision. Given the allegations before us and pursuant to *Burnham*, § 31-51m (c) provides the plaintiff's exclusive remedy for wrongful discharge.

The plaintiff also is incorrect in asserting that he was "wrongfully deprived of his right to plead in the

---

[6] That statute created a cause of action for enforcing payment of certain types of bonds.

alternative." Connecticut does allow plaintiffs to plead inconsistent yet otherwise valid causes of actions together in the same complaint, thereby allowing plaintiffs to pursue alternative remedies or theories of relief. See Practice Book § 10-25; *Dreier* v. *Upjohn Co.*, 196 Conn. 242, 245, 492 A.2d 164 (1985); *Veits* v. *Hartford*, 134 Conn. 428, 433–34, 58 A.2d 389 (1948).

In this action, however, we are not faced with choosing between valid yet conflicting theories of recovery. As previously explained, the law is clear. A common-law approach to a claim of wrongful discharge is barred as long as a remedy has been made available to address the particular public policy concerns. The question is not whether the statutory cause of action remains viable as to a particular plaintiff. The fact that a remedy later becomes unavailable due the running of a limitation period does not mean that there was no remedy available and therefore a common-law cause of action arises.

In the present case, the plaintiff raises the public policy disfavoring discharge of employees who are "whistle-blowers." That concern is addressed in § 31-51m, which creates a cause of action to protect such employees. Because the legislature has made a remedy available under that statute, the courts do not need to recognize a common-law exception to the at-will employment doctrine. The court, therefore, did not prevent the plaintiff from pleading in the alternative, but simply did not allow him to plead an invalid alternative.

Finally, we find no merit in the plaintiff's somewhat tortured argument that the court must have presumed facts not in evidence in reaching its decision to strike count two. The plaintiff argues that the defendant's motion to strike and the plaintiff's opposition to that motion did not contain enough facts to support the court's determination that § 31-51m provided an adequate statutory remedy. Remarkably, the plaintiff

appears to have forgotten that the court also had before it the allegations in the plaintiff's own complaint.

In ruling on a motion to strike, the court must "assume the truth of both the specific factual allegations and any facts fairly provable thereunder. In doing so, moreover, [the court should] read the allegations broadly, rather than narrowly." *Macomber* v. *Travelers Property & Casualty Corp.*, 261 Conn. 620, 629, 804 A.2d 180 (2002). The plaintiff's complaint alleged sufficient facts from which the court could construe the nature of the causes of action pleaded and whether they were legally sufficient. The court correctly decided that count two was precluded by count one and, therefore, failed to state a claim on which relief could be granted.

B

Count three of the complaint alleged intentional infliction of emotional distress. The plaintiff claims that in granting the motion to strike that count, the court improperly decided that the defendant's conduct as alleged in the complaint, even if taken as true, was not "extreme and outrageous" within the meaning of such a cause of action. See *Petyan* v. *Ellis*, 200 Conn. 243, 253–54, 510 A.2d 1337 (1986). We disagree.

To state a legally sufficient claim of intentional infliction of emotional distress, the plaintiff must establish four elements: "(1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." (Internal quotation marks omitted.) Id., 253.

The court found that the plaintiff's claim was legally insufficient as to prong two of the test because the

alleged behavior was not "extreme and outrageous." In determining what conduct is extreme and outrageous "[t]he rule which seems to have emerged is that there is liability for conduct exceeding *all bounds* usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." (Emphasis in original; internal quotation marks omitted.) Id., 254 n.5, quoting W. Prosser & W. Keeton, Torts (5th Ed. 1984) § 12, p. 60. "It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so." (Internal quotation marks omitted.) *Mellaly* v. *Eastman Kodak Co.*, 42 Conn. Sup. 17, 19 n.1, 597 A.2d 846 (1991), quoting 1 Restatement (Second), Torts § 46, comment (h), p. 77 (1965). Only if reasonable people could differ should the question be left for the jury. *Mellaly* v. *Eastman Kodak Co.*, supra, 19 n.1.

The plaintiff alleges that the defendant, through its agents, made "repeated demands and inquiries into [his] personal beliefs and attitudes," and harassed him to change his mind, presumably regarding the signing of the alleged false grant documents. The plaintiff claims that due to that conduct, he became "upset, distressed and aggravated."

Those allegations, which we must take as true, do not amount to conduct that is beyond the bounds of socially tolerable behavior. "The mere act of firing an employee, even if wrongfully motivated, does not transgress the bounds of socially tolerable behavior." (Internal quotation marks omitted.) *Parsons* v. *United Technologies Corp.*, supra, 243 Conn. 89. "Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress." (Internal

quotation marks omitted.) *Dollard* v. *Board of Education,* 63 Conn. App. 550, 554, 777 A.2d 714 (2001). Other courts have rejected claims of emotional distress in wrongful discharge actions in which the defendant's alleged conduct was more specific and egregious. See, e.g., *Appleton* v. *Board of Education,* 254 Conn. 205, 211, 757 A.2d 1059 (2000) (plaintiff subjected to condescending comments in front of colleagues, two psychiatric examinations, police escort from workplace, suspension, forced resignation). In cases in which plaintiffs have pleaded emotional distress and avoided a motion to strike, there often has been some element of public ridicule. See *Knight* v. *Southeastern Council On Alcoholism,* Superior Court, judicial district of New London, Docket No. 557182 (September 21, 2001) (reviewing recent Connecticut decisions construing extreme, outrageous conduct).

Considering all allegations in the complaint in a manner favoring the plaintiff, we do not find any public ridicule or other comparable actions that, if explained to "an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!' " 1 Restatement (Second), Torts § 46, comment (d), p. 73 (1965). The court, therefore, properly struck the plaintiff's third count, which alleged intentional infliction of emotional distress.

After reviewing the briefs and record, and keeping in mind our standard of review, we hold that the court properly granted the defendant's motion to strike counts two and three of the complaint.

## II

The plaintiff's second claim is that the court improperly granted the defendant's motion for summary judgment as to the first count of the complaint, which sought damages for wrongful discharge under § 31-51m (c), because genuine issues of material fact exist as to

whether (1) the plaintiff's claim for unemployment compensation was the type of administrative remedy contemplated under § 31-51m (c), (2) the defendant fraudulently concealed the plaintiff's cause of action and (3) the plaintiff changed his position in reliance on the defendant's action, thereby estopping the defendant's statute of limitations defense.

We first set out our standard of review of a challenge to a court's decision to grant a motion for summary judgment. "On appeal, [w]e must decide whether the trial court erred in determining that there was no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . Because the trial court rendered judgment for the [defendant] as a matter of law, our review is plenary and we must decide whether [the trial court's] conclusions are legally and logically correct and find support in the facts that appear in the record. . . .

"Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . .

"A material fact is a fact that will make a difference in the outcome of the case. . . . Once the moving party has presented evidence in support of the motion for summary judgment, the opposing party must present evidence that demonstrates the existence of some disputed factual issue . . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly

presented to the court . . . ." (Citations omitted; internal quotation marks omitted.) *Yancey* v. *Connecticut Life & Casualty Ins. Co.*, 68 Conn. App. 556, 558–59, 791 A.2d 719 (2002).

### A

The plaintiff first argues that genuine issues of material fact exist as to whether his claim for unemployment compensation was the type of administrative remedy contemplated under § 31-51m (c). Section 31-51m (c) provides in relevant part: "Any employee who is discharged . . . by his employer in violation of the provisions of subsection (b) may, after exhausting all available administrative remedies, bring a civil action, within ninety days of the date of the final administrative determination or within ninety days of such violation, whichever is later . . . ." The plaintiff was discharged on April 7, 1997, but commenced this action on March 21, 2000, almost three years later. The plaintiff's claim, therefore, clearly is barred by the statute's ninety day limitation period unless the plaintiff can show that he was exhausting some available administrative remedy that tolled the relevant limitation period.

The plaintiff argues that although he brought his action almost three years after the alleged wrongful discharge, his claim is not barred by the ninety day limitation period because he sought unemployment benefits, which the plaintiff asserts is an administrative remedy within the meaning of the statute. According to the plaintiff's argument, because the ninety day period should begin to run only after the date of the final determination of those benefits,[7] the plaintiff's cause of action under § 31-51m is not barred.

As the court correctly pointed out in its memorandum of decision, the plaintiff provided no legal authority that

---

[7] See footnote 2.

"a claim for unemployment benefits is an administrative remedy pursuant to § 31-51m (c)." We likewise are unable to find authority for such a proposition.

Administrative adjudications can provide an opportunity for successful resolution of disputes without the time and costs associated with litigation. They also serve to reduce the burden on judicial resources. It therefore makes sense to toll a statute of limitation to allow parties to attempt to resolve their disputes first by administrative means. A valid administrative remedy, however, must provide for "meaningful relief," otherwise litigation is merely postponed. Under § 31-51m (c), the remedy provided for a violation of the statute is "reinstatement of his previous job, payment of back wages and reestablishment of employee benefits," as well as the possibility of court costs and reasonable attorney's fees.

Unemployment compensation does not provide meaningful relief from a claim of wrongful discharge for "whistle-blowing" because it provides only partial wage compensation during periods of unemployment. The unemployment compensation commission cannot provide reinstatement or continuation of employee benefits. The plaintiff's assertion that reinstatement was available under General Statutes § 31-226a is misplaced because that section of the unemployment compensation statutes applies only to cases in which the employee is discharged for filing an unemployment claim. That is not at issue in this case. The plaintiff has failed to meet his burden to show that there is a disputed issue of material fact as to whether seeking unemployment benefits is a proper administrative remedy under the statute and, consequently, his claim is barred by the ninety day limitation period contained in § 31-51m (c).

## B

The plaintiff also argues that the defendant's statute of limitations defense should fail because the defendant

fraudulently concealed the real reason it terminated his employment and because he therefore was unaware of the existence of his cause of action. He argues that General Statutes § 52-595[8] tolled the relevant statute of limitations. Under our case law, to prove fraudulent concealment, a plaintiff must show, by clear and convincing evidence, that the defendant (1) had actual awareness of the facts necessary to establish the plaintiff's cause of action, (2) intentionally concealed those facts from the plaintiff and (3) concealed the facts for the purpose of delaying the plaintiff's filing of a complaint on his cause of action. *Bartone* v. *Robert L. Day Co.*, 232 Conn. 527, 533, 656 A.2d 221 (1995).

On the basis of our review of the record, however, we agree with the court that the plaintiff has failed to provide any evidence, other than his allegations, to support the claim that the defendant intended to conceal its actual reason for terminating his employment. A mere assertion of fact in the affidavit of the party opposing summary judgment is not enough to establish the existence of a material fact that, by itself, defeats a claim for summary judgment. *Emmerson* v. *Super 8 Motel-Stamford*, 59 Conn. App. 462, 466–67, 757 A.2d 651 (2000). The plaintiff has not raised a genuine issue of material fact that his failure to meet the statutory time limit for filing a claim was due to the defendant's alleged fraudulent concealment, and the defendant therefore is entitled to judgment as a matter of law.[9]

[8] General Statutes § 52-595 provides: "If any person, liable to an action by another, fraudulently conceals from him the existence of the cause of such action, such cause of action shall be deemed to accrue against such person so liable therefor at the time when the person entitled to sue thereon first discovers its existence."

[9] We note that even if we were to credit fully the plaintiff's assertions that the defendant fraudulently concealed his cause of action, the plaintiff's action still would be time barred. The plaintiff claims he did not learn of his cause of action until the unemployment compensation hearings. The only remedy under General Statutes § 52-595 is a tolling of the relevant statute of limitations until the "time when the person entitled to sue thereon

## C

The plaintiff also claims that the defendant should be estopped from asserting the statute of limitations defense. That claim also fails because, as with the fraudulent concealment argument, the plaintiff has failed to present the necessary factual predicate.

"There are two essential elements to an estoppel—the party must do or say something that is intended or calculated to induce another to believe in the existence of certain facts and to act upon that belief, and the other party, influenced thereby, must actually change his position or do some act to his injury which he otherwise would not have done. . . . Further, [i]t is the burden of the person claiming the estoppel to show that he exercised due diligence to ascertain the truth and that he not only lacked knowledge of the true state of things but had no convenient means of acquiring that knowledge. . . . [T]here must generally be some intended deception in the conduct or declarations of the party to be estopped, or such gross negligence on his part as amounts to constructive fraud, by which another has been misled to his injury." (Citations omitted; internal quotation marks omitted.) *Green* v. *Connecticut Disposal Service, Inc.*, 62 Conn. App. 83, 91–92, 771 A.2d 137, cert. denied, 256 Conn. 912, 772 A.2d 1124 (2001).

The plaintiff presents no evidence showing that he was prejudiced by a deceptive act of the defendant that kept him from filing his action within the limitation period. The plaintiff's only alleged claim of deception is that the defendant lied when it stated that the true reason for his discharge was due to insubordination when it really was due to his failure to produce false documents.

---

first discovers its existence." The plaintiff nevertheless filed his action more than ninety days after the hearings.

As the court stated in its memorandum of decision, however, "while [the plaintiff] may not have had sufficient 'proof' at the time of his discharge to establish his claim . . . he had enough information to believe and did believe that his discharge was for a retaliatory purpose. Therefore, he had reason to believe that he had suffered 'actionable harm,' yet he delayed bringing suit until almost three years later." Because the plaintiff has failed to show the existence of any issues of material fact regarding the defendant's statute of limitations defense, the defendant is entitled to judgment as a matter of law, and we conclude that the court properly granted the defendant's motion for summary judgment as to count one of the complaint.

## III

Finally, the plaintiff claims that the court improperly denied his motion to reargue because he believes that conflicting rulings improperly denied him a remedy. We disagree.

"We review claims that the court improperly denied a motion for reargument under the abuse of discretion standard. . . . When reviewing a decision for an abuse of discretion, every reasonable presumption should be given in favor of its correctness." (Internal quotation marks omitted.) *Cadle Co.* v. *Gabel*, 69 Conn. App. 279, 299, 794 A.2d 1029 (2002). We will find that such an abuse of discretion exists when the court's decision creates a miscarriage of justice. See *Heyman Associates No. 1* v. *Ins. Co. of Pennsylvania*, 231 Conn. 756, 786, 653 A.2d 122 (1995).

Because we have concluded that the court properly granted the defendant's motion to strike and motion for summary judgment, we further conclude that the court's decision denying the plaintiff's motion to reargue did not cause a miscarriage of justice, was suffi-

ciently supported by the evidence and was not, therefore, in abuse of that court's discretion.

The judgment is affirmed.

In this opinion the other judges concurred.