******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

## CORIE GENTILE-RIAZ *v.* SAMO THRAKI, LLC, ET AL.
### (AC 47504)

Alvord, Wilson and Sheldon, Js.

*Syllabus*

The plaintiff appealed from the trial court's judgment granting the defendants' motions to dismiss her retaliatory discharge action, which alleged a violation of the whistleblower statute (§ 31-51m). The plaintiff, while employed at a pizza restaurant owned by the defendant S Co. and managed by the defendant L, submitted a complaint to the local health district reporting unsanitary conditions at the restaurant. The day after a health inspector visited the restaurant and disclosed that the plaintiff had made the complaint, the defendants terminated her employment. The plaintiff claimed that the trial court erred in determining that it lacked subject matter jurisdiction on the ground that she had failed to exhaust administrative remedies available through the Department of Labor, as required by § 31-51m (c). *Held*:

The trial court improperly granted the defendants' motions to dismiss the plaintiff's retaliatory discharge action on the ground that it lacked subject matter jurisdiction, as the plaintiff's action focused on her employer's conduct in terminating her employment following her complaint to the health district, the substance of which related to public health, not occupational safety or health.

Argued September 9—officially released December 16, 2025

*Procedural History*

Action to recover damages for the plaintiff's allegedly retaliatory discharge from employment, and for other relief, brought to the Superior Court in the judicial district of New London, where the court, *Papastavros, J.*, granted the named defendant's motion to dismiss; thereafter, the court, *Spallone, J.*, granted the defendant Dimitrios Lenoudias' motion to dismiss and rendered a judgment of dismissal, from which the plaintiff appealed to this court. *Reversed*; *further proceedings.*

*Theodore W. Heiser*, for the appellant (plaintiff)

*Peter J. Bartinik, Jr.*, for the appellees (defendants).

*Opinion*

ALVORD, J. The plaintiff, Corie Gentile-Riaz, appeals from the judgment of the trial court granting the motions of the defendants, Samo Thraki, LLC, doing business as Midway Pizza (Midway Pizza), and Dimitrios Lenoudias, to dismiss the plaintiff's complaint alleging retaliatory discharge in violation of General Statutes § 31-51m. On appeal, the plaintiff claims that the court improperly determined that it lacked subject matter jurisdiction on the ground that she failed to exhaust administrative remedies. We reverse the judgment of the trial court.

The following facts, as alleged in the plaintiff's complaint and viewed in the light most favorable to the plaintiff, and procedural history are relevant to our review of the plaintiff's claim on appeal. The plaintiff commenced the present action in May, 2022, by way of a single count complaint alleging that her employment had been terminated in violation of § 31-51m. Specifically, she alleged that she had been employed by Midway Pizza, with Lenoudias as her direct supervisor, from on or about February 28, 2019, through the date of the termination of her employment on April 13, 2022. The plaintiff alleged that she had "performed the duties of her position in a satisfactory manner throughout her tenure and was not subject to any discipline or performance issues that would have led to her termination." She alleged that she "had witnessed numerous health code violations throughout her employment with Midway Pizza and was concerned for the public's safety. . . . On or about April 11, 2022, the plaintiff sent a very detailed email to Stephen Mansfield, Director of Health, Ledge Light Health District (health district) concerning Midway Pizza's numerous health code violations. . . . Upon information and belief, an investigator from the health district visited the restaurant on April 12, 2022, and disclosed that the plaintiff had made the health

code complaint. . . . Thereafter, on April 13, 2022, Lenoudias terminated the plaintiff's employment with Midway Pizza."

The plaintiff alleged that her report to the health district brought her within the protection of § 31-51m, and that the defendants retaliated against her by terminating her employment without providing a genuine reason and in violation of § 31-51m. She alleged that "[i]t was only after the plaintiff engaged in the protected activity of raising concerns about health and safety violations, welfare and compliance with state law that she was terminated from employment."

On February 17, 2023, Midway Pizza filed a motion to dismiss the plaintiff's complaint insofar as it set forth a claim against it on the ground that the court lacked subject matter jurisdiction over the plaintiff's claim because she failed to exhaust administrative remedies available to her through the Department of Labor. The motion was accompanied by a memorandum of law in support, in which Midway Pizza relied on General Statutes § 31-40q, which requires employers to prohibit smoking in the workplace, and General Statutes § 31-379, which prohibits retaliation following reports of violation of occupational safety and health standards, in support of its argument that the plaintiff had an administrative remedy with the Department of Labor. Midway Pizza argued that the plaintiff's failure to exhaust administrative remedies with the Department of Labor deprived the court of subject matter jurisdiction. Midway Pizza attached to its motion an affidavit from Lenoudias in which he averred that he was a member of Samo Thraki, LLC, as well as the manager of Midway Pizza. He further averred that, to his knowledge, the plaintiff had not filed an administrative claim with the Department of Labor. Midway Pizza also attached to the motion to dismiss a copy of the plaintiff's

health district complaint.[1] The plaintiff filed an opposi-
tion to the motion to dismiss, arguing that, because

[1] The plaintiff's health district complaint stated: "Hello, I am currently an employee at Midway Pizza in Groton CT. I am e-mailing you because I am concerned for people's health. I have spoken to my employer in regards to these concerns and I'm afraid my voice has been ignored! There are so many things at Midway Pizza that are not being done by proper code. I would prefer this e-mail be anonymous, so that I will NOT lose my job. I love my job and I love our customers. I just don't like how things are being done inappropriately. I have been informed by the owner Dimitrios Lenoudias (a.k.a. Jimmy) and his brother Angelo Lenoudias that they have 'FRIENDS THAT WORK INSIDE THE HEALTH DEPARTMENT' which is why they seem to get away with NOT FOLLOWING PROPER CODE! They have said that this person/persons have made it possible for them to remain up and running without consequence by TURNING A BLIND EYE TO THEIR UNETHICAL PROCEDURES. There are many things to report so I will list them one at a time! There is NOT ONE person currently at Midway Pizza who is a certified safety food operator. There is a certificate on the wall with a woman by the name of Hope Whitman on it. However, Hope Whitman no longer works at Midway Pizza. In fact she has not worked there since two maybe three weeks after I started and I started there three years ago now. She is currently still on payroll to appear as though she still works there. However, she is on the payroll due to helping the owner with his bookkeeping. Not because she physically works behind the counter or even with the food. There is NO GREASE TRAP in the kitchen at all. They had it removed because it smelled terrible and it kept clogging, so now all the grease runs right into the sewer. There is NO HAND WASHING SINK in the front for us to be able to wash our hands. They had a sink in the front of the store behind the counter, but it was not connected to a water inlet nor did it have a drain connection. It was just a sink placed into the counter to appear as though it had proper running water with a bucket placed underneath to catch any liquid that anyone had poured down the drain. We have gloves, but we are told to only wear them when there is a customer in the building, when we are wearing the gloves they prefer that instead of changing them we use a rag to wipe/wash them. I get yelled at frequently because I refuse to use the same gloves over and over. I have actually gotten screamed at and lectured about how expensive one case of gloves are! I respond with, it's a small price to pay to see to it that no one gets ill. There is a RAT/MOUSE PROBLEM! They have traps placed everywhere in the store. At night you can hear them running across the ceiling tiles due to having a drop ceiling. I have found oil bottles eaten into and instead of them throwing the oil away, they saved it by pouring it into another receptacle. I have found bags of spaghetti eaten into. Once more instead of throwing the spaghetti away, they just throw out the broken pieces or eaten pieces. Only once have they thrown the spaghetti away and that was only because I kept explaining how mice/rats carry diseases and GOD forbid if someone were to get sick. They have caught mice and have also caught rats. Whatever they catch they kill by either stepping on them or drowning them. Both the

her complaint was made to a municipal health district, rather than the state or federal occupational safety and health agencies, there were no administrative remedies available to her and the appropriate mechanism to bring

owner and his brother both smoke cigarettes which is fine, but NOT WHILE THEY'RE WORKING. The owner sits in one of the booths smoking cigarette after cigarette with a little cup of water just in case a customer walks in so that he can extinguish his cigarette. His brother also known as our "cook" SMOKES IN THE KITCHEN. Most days there are cigarette butts sitting on the counter tops. I have found ashes on the counters and I have even found cigarette ashes on one of the pizza's I have pulled out of the walk in to sauce. There is a spot on the counter top next to the coffee machine to the left where they have taped a piece of foil to the counter so that if a customer walks in they can set the cigarette on the counter without burning the counter top and quickly take care of the customer. Inside of the dish bucket under the counter is a can filled with water to throw the lit cigarette butts in to also extinguish if the customers walk in. NO ONE WASHES THEIR HANDS AFTER SMOKING with the exception of Abigail Piktelis one of my co-workers. In the storage room there are coffee cups and souffle cups with water and cigarette butts in them cause the storage room is also used as a smoking area when the owners friends come through. I have witnessed the owner with his hand down his pants scratching his butt and balls not wash his hands then go to the front to greet customers and make their food! We were marked points for the shelves in the storage room not having stain/polyurethane and for the flooring and yet none of these things have even started to be corrected. There is NO PROPER MATTS for the floors in which we stand for long periods of time. I was informed on 3/11/22 that I was no longer allowed to change the bain [marie] containers nightly. I am only allowed to change them once a week now, which is disgusting due to all the grease that accumulates in them on a daily basis. At times they put frozen items on top of the oven to defrost instead of in the walk in because someone forgot to take something out the night before. The owner's wife has a habit of eating the provolone cheese which wouldn't be a problem if she didn't take a bite then throw the remainder of the slice back into the container where the unused provolone sits. Nothing is ever dated or labeled to know how old it is. I continue to throw things away that either feel slimy, look discolored, or have a foul odor. I have witnessed the owner cut RAW CHICKEN, then use that same knife to cut cooked chicken. The owners brother drinks on the job and in doing so I believe that some foods don't get cooked to the proper temperatures. Which I believe is why he microwaves all meats cooked in the fryer. I could continue on with more things wrong with the way that this business is ran, however I believe I've said more than enough at this point. As you can see from the reasons listed above there are serious safety health issues at stake here that should definitely be looked into and addressed. There are also issues of sexual harassment and hostile work environment which will be addressed to the proper channels. Thank you for your time and understanding."

her whistleblower claim was pursuant to § 31-51m. The plaintiff did not attach any documents to her opposition to the motion to dismiss in an attempt to dispute the proof on which Midway Pizza relied in the attachments to its motion to dismiss.

The court, *Papastavros, J.*, heard oral argument on the motion to dismiss on August 3, 2023. On August 11, 2023, the court issued its memorandum of decision, in which it concluded that the plaintiff had administrative remedies available through the Department of Labor and, therefore, she was required to exhaust those remedies prior to initiating suit. The court concluded that, because the plaintiff had failed to exhaust her administrative remedies, the court lacked subject matter jurisdiction and granted Midway Pizza's motion to dismiss the complaint against it. The plaintiff filed a motion to reargue, and Midway Pizza filed an opposition thereto. On October 3, 2023, the court denied the motion to reargue. The plaintiff then filed a notice of intent to appeal from that decision pursuant to Practice Book § 61-5.

On October 18, 2023, Lenoudias filed a motion to dismiss the plaintiff's complaint against him and a memorandum of law in support of the motion. Therein, he argued that the complaint should be dismissed for the same reasons as those expressed in the court's memorandum of decision granting Midway Pizza's motion to dismiss. He further argued that the law of the case doctrine should apply. On March 15, 2024, the court, *Spallone, J.*, granted Lenoudias' motion to dismiss, stating that it adopted Judge Papastavros' analysis and that dismissal was consistent with the law of the case doctrine. This appeal followed.

"We begin our discussion by setting forth the well settled standard of review that governs an appeal from a judgment granting a motion to dismiss on the ground

of a lack of subject matter jurisdiction. A motion to dismiss properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court. . . . A court deciding a motion to dismiss must determine *not the merits of the claim or even its legal sufficiency*, but rather, whether the claim is one that the court has jurisdiction to hear and decide. . . . [B]ecause [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary." (Emphasis in original; internal quotation marks omitted.) *Godbout* v. *Attanasio*, 199 Conn. App. 88, 95, 234 A.3d 1031 (2020). "In undertaking this review, we are mindful of the well established notion that, in determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged." (Internal quotation marks omitted.) *Graham* v. *Friedlander*, 334 Conn. 564, 571, 223 A.3d 796 (2020).

"Trial courts addressing motions to dismiss for lack of subject matter jurisdiction pursuant to [Practice Book § 10-30] may encounter different situations, depending on the status of the record in the case. . . . [If] a trial court decides a jurisdictional question raised by a pretrial motion to dismiss on the basis of the complaint alone, it must consider the allegations of the complaint in their most favorable light. . . . In this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . .

"In contrast, if the complaint is supplemented by undisputed facts established by affidavits submitted in support of the motion to dismiss . . . other types of undisputed evidence . . . and/or public records of which judicial notice may be taken . . . the trial court, in determining the jurisdictional issue, may consider

these supplementary undisputed facts and need not conclusively presume the validity of the allegations of the complaint. . . . Rather, those allegations are tempered by the light shed on them by the [supplementary undisputed facts]. . . . If affidavits and/or other evidence submitted in support of a defendant's motion to dismiss conclusively establish that jurisdiction is lacking, and the plaintiff fails to undermine this conclusion with counteraffidavits . . . or other evidence, the trial court may dismiss the action without further proceedings. . . . If, however, the defendant submits either no proof to rebut the plaintiff's jurisdictional allegations . . . or only evidence that fails to call those allegations into question . . . the plaintiff need not supply counteraffidavits or other evidence to support the complaint, but may rest on the jurisdictional allegations therein. . . .

"Finally, where a jurisdictional determination is dependent on the resolution of a critical factual dispute, it cannot be decided on a motion to dismiss in the absence of an evidentiary hearing to establish jurisdictional facts. . . . In that situation, [a]n evidentiary hearing is necessary because a court cannot make a critical factual [jurisdictional] finding based on memoranda and documents submitted by the parties." (Internal quotation marks omitted.) *Godbout* v. *Attanasio*, supra, 199 Conn. App. 96–97. In the present case, the factual allegations set forth in the complaint were supplemented by undisputed facts contained in documents, including the plaintiff's health district complaint, attached to Midway Pizza's memorandum of law in support of its motion to dismiss.

On appeal, the plaintiff claims that the court improperly concluded that it lacked subject matter jurisdiction to adjudicate the merits of her retaliatory discharge

action because she failed to exhaust administrative remedies before filing her action in Superior Court. We agree with the plaintiff.

We first set forth relevant legal principles. Connecticut's whistleblower statute, § 31-51m, protects an "employee from retaliatory discharge when the employee has complained, in good faith, about a suspected violation of a state or federal law or regulation." (Footnote omitted.) *Arnone* v. *Enfield*, 79 Conn. App. 501, 506–507, 831 A.2d 260, cert. denied, 266 Conn. 932, 837 A.2d 804 (2003). Section 31-51m (b) provides in relevant part: "No employer shall discharge, discipline or otherwise penalize any employee because . . . the employee . . . reports, verbally or in writing, a violation or a suspected violation of any state or federal law or regulation or any municipal ordinance or regulation to a public body . . . ." Subsection (c) provides in relevant part: "Any employee who is discharged, disciplined or otherwise penalized by his employer in violation of the provisions of subsection (b) may, after exhausting all available administrative remedies, bring a civil action, within ninety days of the date of the final administrative determination or within ninety days of such violation, whichever is later, in the superior court for the judicial district where the violation is alleged to have occurred or where the employer has its principal office, for the reinstatement of his previous job, payment of back wages and reestablishment of employee benefits to which he would have otherwise been entitled if such violation had not occurred. An employee's recovery from any such action shall be limited to such items, provided the court may allow to the prevailing party his costs, together with reasonable attorney's fees to be taxed by the court. . . ." General Statutes § 31-51m (c).

In concluding that the plaintiff had failed to exhaust available administrative remedies, the trial court looked

to the federal Occupational Safety and Health Act (federal act), which was designed "to assure so far as possible every working man and woman in the Nation safe and healthful working conditions and to preserve our human resources . . . ." 29 U.S.C. § 651 (b) (2018). Title 29 of the United States Code, § 660 (c) (1), prohibits the discharge or discrimination against an employee for exercising their rights under the federal act. Section 660 (c) provides in relevant part: "No person shall discharge or in any manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding *under or related to* this chapter . . . ." (Emphasis added.) 29 U.S.C. § 660 (c) (1) (2018). Subsection (c) (2) of 29 U.S.C. § 660 provides a statutory administrative remedy for employees who allege that they were discharged in retaliation for reporting violations of the federal act. Pursuant to 29 U.S.C. § 660 (c) (2), an employee who believes that he was discharged in violation of 29 U.S.C. § 660 (c) (1) may file a complaint with the Secretary of Labor within thirty days following the discharge. If the Secretary of Labor determines that the employee was discharged in retaliation for filing a complaint under or related to the federal act, the employee may pursue an action against the employer in federal court. 29 U.S.C. § 660 (c) (2) (2018). The court possesses jurisdiction to "restrain violations of [29 U.S.C. § 660 (c) (1)] and order all appropriate relief including rehiring or reinstatement of the employee to his former position with back pay." 29 U.S.C. § 660 (c) (2) (2018).

Section 31-51m requires that a party exhaust all available administrative remedies before pursuing a civil action. "When a plaintiff has available to him administrative remedies that could have afforded him meaningful relief . . . [h]is failure to [properly pursue those remedies] forecloses his access to judicial relief,

because it deprive[s] the trial court of jurisdiction to hear his complaint. . . . In addition, when a plaintiff fail[s] to follow the administrative route prescribed by the legislature for his claim . . . the plaintiff fails to exhaust his or her administrative remedies." (Citations omitted; internal quotation marks omitted.) *Burnham* v. *Karl & Gelb*, *P.C.*, 252 Conn. 153, 168–69, 745 A.2d 178 (2000); see also *Campbell* v. *Plymouth*, 74 Conn. App. 67, 82, 811 A.2d 243 (2002) ("Administrative adjudications can provide an opportunity for successful resolution of disputes without the time and costs associated with litigation. They also serve to reduce the burden on judicial resources. It therefore makes sense to toll a statute of limitation to allow parties to attempt to resolve their disputes first by administrative means. A valid administrative remedy, however, must provide for 'meaningful relief,' otherwise litigation is merely postponed.").

Because the federal act provides statutory administrative remedies to employees raising claims either "under" or "related to" that act; see 29 U.S.C. § 660 (c) (1) (2018); we must consider the nature of the plaintiff's health district complaint. First, the plaintiff's complaint was not made under the act, in that it was not filed with the Occupational Safety and Health Administration (OSHA), but rather with the municipal health district. As to whether the plaintiff's claim was related to the federal act, we consider the federal regulations. Title 29 of the 2024 edition of the Code of Federal Regulations, § 1977.1, provides in relevant part that "[t]he Occupational Safety and Health Act of 1970 . . . is a Federal statute of general application designed to regulate employment conditions relating to occupational safety and health and to achieve safer and healthier workplaces throughout the Nation."

Title 29 of the 2024 edition of the Code of Federal Regulations, § 1977.9, provides guidance regarding

complaints that are considered "related to" the federal act. Specifically, it provides: "(a) . . . The range of complaints 'related to' the Act is commensurate with the broad remedial purposes of this legislation and the sweeping scope of its application, which entails the full extent of the commerce power. . . . (b) Complaints registered with other Federal agencies which have the authority to regulate or investigate occupational safety and health conditions are complaints 'related to' this Act. Likewise, complaints made to State or local agencies regarding occupational safety and health conditions would be 'related to' the Act. *Such complaints, however, must relate to conditions at the workplace, as distinguished from complaints touching only upon general public safety and health.* . . ." (Emphasis added.) 29 C.F.R. § 1977.9 (a) and (b) (2024).

With this statutory and regulatory background in mind, we turn to the plaintiff's health district complaint. The plaintiff began her complaint by stating that she was "concerned for people's health." Her complaints included: (1) lack of a certified safety food operator; (2) no grease trap causing grease to run into the sewer; (3) no handwashing sink and direction to reuse gloves, which the plaintiff stated was a concern of hers to "see to it that no one gets ill"; (4) rats and/or mice have eaten into oil bottles and the oil was not thrown away but rather poured into another receptacle; (5) rats and/or mice have eaten into spaghetti and only the broken pieces were thrown away, however, "[o]nly once have they thrown the spaghetti away and that was only because [the plaintiff] kept explaining how mice/rats carry diseases and GOD forbid if someone were to get sick"; (6) smoking cigarettes in the restaurant and kitchen and that the plaintiff has "found ashes on the counters and . . . even found cigarette ashes on one of the pizzas [she] pulled out of the walk in to sauce"; (7) no one washes their hands after smoking with the

exception of one coworker; (8) she had witnessed "the owner with his hand down his pants scratching his butt and balls not wash his hands then go to the front to greet customers and make their food"; (9) no proper mats for the floors where the plaintiff and others stand for long periods of time; (10) only being allowed to change the bain-marie containers weekly rather than nightly; (11) improper defrosting of foods on top of the oven rather than in the refrigerator; (12) the owner's wife taking a bite from a slice of cheese and returning the rest of the slice to the container; (13) no food is dated or labeled, and the plaintiff continues to throw things away that "either feel slimy, look discolored, or have a foul odor"; (14) the owner has cut raw chicken and then cooked chicken with the same knife; and (15) the owner's brother "drinks on the job and [the plaintiff believes] that some foods don't get cooked to the proper temperatures. Which [she] believes is why he micro-waves all meats cooked in the fryer." According to the plaintiff, after an investigator from the health district visited the restaurant, the plaintiff's employment was terminated.

We conclude that the plaintiff was not required to exhaust administrative remedies prior to filing her retal-iatory discharge action arising out of the termination of her employment following her health district complaint. First, the plaintiff's stated concern in her health district complaint was public health. Cf. *Su* v. *Kwiat Eye & Laser Surgery, PLLC*, Docket No. 1:22-cv-00264 (AMN/ DJS), 2024 WL 3665768, *4 (N.D.N.Y. August 6, 2024) (rejecting attempt to frame complaint as concerning patient well-being where plaintiff's specific concern about patients' health was that they would spread their illness in workplace to her or other employees). With that focus, the plaintiff understandably filed her com-plaint with the health district rather than with OSHA.

Second, the plaintiff's specific allegations overwhelmingly focused on improper food storage, preparation, and safety. The plaintiff repeatedly stated her concern that customers would get sick from the improper food safety and handwashing procedures. This focus on the customers included her complaints about smoking, which related to food safety in that the plaintiff alleged that she had seen ashes on customers' food.[2] Nowhere

---

[2] The defendants contend that the plaintiff's references in her health district complaint to smoking in the workplace alleged violations of General Statutes § 31-40q (b), which requires that "[e]ach employer shall prohibit smoking . . . in any area of any business facility under said employer's control." The defendants argue that the plaintiff had a statutory administrative remedy for retaliation following claims of violations of § 31-40q under Connecticut's Occupational Safety and Health Act, General Statutes § 31-367 et seq.

General Statutes § 31-379 provides in relevant part: "(a) No person shall discharge, discipline, penalize or in any manner discriminate against any employee . . . because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter . . . .

"(b) Any employee who believes that such employee has been discharged, disciplined, penalized or otherwise discriminated against by any person in violation of subsection (a) of this section may, not later than one hundred eighty days after such violation occurs, file a complaint with the commissioner alleging such violation. Upon receipt of such complaint the commissioner shall hold a hearing in accordance with the provisions of chapter 54.

"(c) The commissioner may award an aggrieved employee all appropriate relief, including rehiring or reinstatement of the employee to the employee's former position, back pay and reestablishment of any employee benefits to which the employee would otherwise have been eligible if such violation had not occurred. The commissioner shall award a prevailing employee such employee's costs, together with reasonable attorneys' fees to be determined by the commissioner.

"(d) Any party aggrieved by the commissioner's decision under subsection (c) of this section may appeal the decision to the Superior Court in accordance with the provisions of chapter 54."

The plaintiff responds: "(1) the plaintiff did not exercise any rights under § 31-40q, because her complaints concerning smoking were specifically in reference to its impact on food preparation and service; (2) § 31-40q does not provide any administrative remedies nor does it provide a private right of action to an employee; (3) the only enforcement provision applying to § 31-40q is [General Statutes] § 31-50, which only indicates that the 'commissioner shall enforce the provisions' but does not provide a private remedy; and (4) § 31-379 only applies to chapter 571 of title 31, which is the Occupational Safety and Health Act, but [§] 31-40q is in a separate chapter."

in the plaintiff's complaint does she reference a concern regarding her own health. Thus, we conclude that the plaintiff's complaints "touch[ed] only upon general public safety and health" rather than conditions at the workplace. See 29 C.F.R. § 1977.9 (2024).

We reach the same conclusion upon examination of the plaintiff's complaint filed in the Superior Court. The plaintiff captioned her claim as alleging a violation of § 31-51m and asserted therein that the defendants retaliated against her following her report to the health district after she had "witnessed numerous health code violations throughout her employment . . . and was concerned for the public's safety." Nowhere in the plaintiff's complaint does she reference occupational safety or health.

The defendants' focus is on one allegation in the plaintiff's health district complaint, namely, the floor mats in the restaurant. We acknowledge that the floor mats could relate to employee safety, however, we decline to focus exclusively on that one allegation where the substance of the complaint as a whole relates to public health. The gravamen of the plaintiff's health district complaint was that conditions and practices in the restaurant are a threat to public health, and the plaintiff's Superior Court complaint alleges that the defendants retaliated against the plaintiff on the basis of her report. Cf. *Metropolitan District* v. *Commission on Human Rights & Opportunities*, 180 Conn. App. 478, 512, 184 A.3d 287 (because gravamen of plaintiff's complaint was that defendant acted in contravention of statutory and regulatory obligations, plaintiff could not bypass exhaustion requirement by including variety of requests in prayer for relief, noting that analysis

We agree with the plaintiff that her references to smoking in her health district complaint did not necessitate exhaustion of administrative remedies. The plaintiff made no reference to her own health but rather complained about smoking in the context of food preparation and service.

considers factual predicate for claims), cert. denied, 328 Conn. 937, 184 A.3d 267 (2018).

We note that an identified primary policy underlying the exhaustion doctrine would not be served by requiring the plaintiff to pursue her claim through OSHA. Our Supreme Court has explained that "a primary purpose of the [exhaustion] doctrine is to foster an orderly process of administrative adjudication and judicial review, offering a reviewing court the benefit of the agency's findings and conclusions. It relieves courts of the burden of prematurely deciding questions that, entrusted to an agency, may receive a satisfactory administrative disposition and avoid the need for judicial review. . . . Moreover, the exhaustion doctrine recognizes the notion, grounded in deference to [the legislature's] delegation of authority to coordinate branches of [g]overnment, that agencies, not the courts, ought to have primary responsibility for the programs that [the legislature] has charged them to administer. . . . Therefore, exhaustion of remedies serves dual functions: it protects the courts from becoming unnecessarily burdened with administrative appeals and it ensures the integrity of the agency's role in administering its statutory responsibilities." (Internal quotation marks omitted.) *Financial Consulting, LLC* v. *Commissioner of Ins.*, 315 Conn. 196, 212–13, 105 A.3d 210 (2014). Similarly, our appellate courts have stated that "one purpose underlying the exhaustion doctrine is that judicial review may be hindered by the failure of the litigant to allow the agency to make a factual record, or to exercise discretion or apply its expertise." (Internal quotation marks omitted.) *Fitzgerald* v. *Bridgeport*, 187 Conn. App. 301, 318, 202 A.3d 385 (2019); see also *Stepney, LLC* v. *Fairfield*, 263 Conn. 558, 568, 821 A.2d 725 (2003) (policies underlying exhaustion doctrine were best served by requiring plaintiff to take claim before agency's commissioner, where issue involved fact

bound inquiry that commissioner was uniquely qualified to undertake).

In the present case, we are not convinced that OSHA is "uniquely qualified to undertake" the inquiry into whether the plaintiff's employment improperly was terminated based on her complaint to the health district. This retaliatory discharge action will not focus on occupational safety and health but, rather, on an employer's conduct in terminating an employee following a health district complaint. Accordingly, we conclude that permitting the present action to proceed would not violate the exhaustion doctrine or its policy underpinnings.

Because there were no administrative remedies available to the plaintiff in connection with her health district complaint, the court improperly concluded that the plaintiff failed to comply with § 31-51m by not exhausting administrative remedies prior to commencing the present action. Accordingly, the court improperly granted the defendants' motions to dismiss.

The judgment is reversed and the case is remanded with direction to deny the defendants' motions to dismiss and for further proceedings according to law.

In this opinion the other judges concurred.